## LYKES *v.* UNITED STATES.

No. 173.   Argued November 29–30, 1951.—Decided March 24, 1952.

*George W. Ericksen* argued the cause for petitioner. With him on the brief was *Chester H. Ferguson.*

■■■■■■■■■■■■■

*Harry Baum* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Acting Assistant Attorney General Slack* and *John F. Davis.*

Mr. Justice Burton delivered the opinion of the Court.

The question here is whether, for federal income tax purposes, an individual taxpayer was entitled to deduct, from his gross income, an attorney's fee paid for contesting the amount of his federal gift tax. For the reasons hereafter stated we hold that he was not.

In 1940, Joseph T. Lykes, petitioner herein, gave to his wife and to each of his three children, respectively, 250 shares of common stock in Lykes Brothers, Inc., a closely held family corporation. In his federal gift tax return he valued the shares at $120 each and, on that basis, paid a tax of $13,032.75. In 1944, the Commissioner of Internal Revenue revalued the shares at $915.50 each and notified petitioner of a gift tax deficiency of $145,276.50. Through his attorney, petitioner sought a redetermination of the deficiency, forestalled an assessment, and, in 1946, paid $15,612.75 in settlement of the deficiency pursuant to a finding of the Tax Court based on stipulated facts. In 1944, petitioner had paid his attorney $7,263.83 for legal services in the gift tax controversy but, in his federal income tax return, had not deducted that expenditure from his taxable income. In 1946, he claimed a tax refund on the ground that the attorney's fee should have been deducted under § 23 (a)(2) of the Internal Revenue Code.[1] His claim was denied by the Commissioner and petitioner

---

[1] "SEC. 23. DEDUCTIONS FROM GROSS INCOME.

"In computing net income there shall be allowed as deductions:

"(a) Expenses.—

. . . . .

"(2) Non-trade or non-business expenses.—In the case of an individual, all the ordinary and necessary expenses paid or incurred

sued for a refund. On stipulated and uncontroverted facts the District Court held, as a matter of law, that the payment should have been deducted and entered judgment for petitioner. 84 F. Supp. 537.[2] The Court of Appeals reversed. 188 F. 2d 964. Because of the important statutory issue involved and petitioner's claim that this case is distinguishable from *Cobb* v. *Commissioner*, 173 F. 2d 711, we granted certiorari. 342 U. S. 810.

I. Deductions from an individual's taxable income are limited to those allowed by § 23.[3] Their extent depends upon the legislative policy expressed in the fair and natural meaning of that section.[4]

---

during the taxable year *for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."* (Emphasis supplied.) 53 Stat. 12, 56 Stat. 819, 26 U. S. C. § 23 (a) (2).

[2] "To construe the law as giving to the Commissioner the power to assess a taxpayer with a deficiency tax greatly in excess of what he owes and to hold that such law denies to the taxpayer the right to contest such assessment, except at his own personal expense, just isn't justice under the law. The statute in question gives the Commissioner no such power . . . ." 84 F. Supp. 537, 539.

[3] The tax is "levied, collected, and paid for each taxable year upon the net income of every individual . . . ." 53 Stat. 5, 26 U. S. C. § 11. " 'Net income' means the gross income computed under section 22, less the deductions allowed by section 23." 53 Stat. 9, 26 U. S. C. § 21.

[4] There have been expressions by this Court placing a restrictive interpretation upon allowable deductions by virtue of "the now familiar rule that an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer." *Interstate Transit Lines* v. *Commissioner*, 319 U. S. 590, 593; *Deputy* v. *du Pont*, 308 U. S. 488, 493; *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, 440. Such an interpretation is not necessary here and is not relied upon in this case. See Griswold, An Argument against the Doctrine that Deductions Should Be Narrowly Construed as a Matter of Legislative Grace, 56 Harv. L. Rev. 1142.

Section 24 adds that in "computing net income no deduction shall in any case be allowed in respect of—(1) Personal, living, or family expenses . . . ." 53 Stat. 16, 56 Stat. 826, 26 U. S. C. § 24 (1). Insofar as gifts to members of a donor's family are in the nature of personal or family expenses, the donor's expenditures for accounting, legal or other services incurred in making those gifts are of a like nature. The nondeductibility of such expenditures, therefore, is indicated both by the absence of any affirmative allowance of their deductibility under § 23 and by the express denial of the deductibility of all personal or family expenses under § 24.

If the expenditure in the instant case had been made before 1942, it is clear that it would not have been deductible. At that time § 23 permitted an individual to deduct "ordinary and necessary expenses paid or incurred during the taxable year *in carrying on any trade or business* . . . ." (Emphasis supplied.) 53 Stat. 12, 26 U. S. C. (1940 ed.) § 23 (a)(1). It made no mention of nontrade or nonbusiness expenses. Accordingly, in *Higgins* v. *Commissioner,* 312 U. S. 212, when this Court held that expenses incurred by an individual taxpayer in looking after his own income-producing securities were not expenses "incurred . . . in carrying on any trade or business," it also held that they were not deductible.[5]

To change that result, Congress, in 1942, added the present § 23 (a)(2).[6] That provision, as demonstrated in its legislative history, permits the deduction of some, but not all, of the nontrade and nonbusiness expenses of an

---

[5] And see *United States* v. *Pyne,* 313 U. S. 127 (attorney's fees and other expenses of executors in caring for securities and investments not deductible); *City Bank Co.* v. *Helvering,* 313 U. S. 121 (similar expenses of testamentary trustee not deductible); *Van Wart* v. *Commissioner,* 295 U. S. 112 (attorney's fee for litigation to recover income for a ward not deductible).

[6] See note 1, *supra.*

individual taxpayer. It specifies those paid or incurred (1) "for the production or collection of income" or (2) "for the management, conservation, or maintenance of property held for the production of income." See H. R. Rep. No. 2333, 77th Cong., 2d Sess.[7] Congress might have gone further. However, neither the decision that occasioned the amendment, the Committee Reports on it, nor the language adopted in it indicate that Congress sought to make such a change of policy as would authorize widespread deductibility of personal, living or family expenditures in the face of § 24 (1). *Bingham's Trust* v.

---

[7] ". . . Due partly to the inadequacy of the statute and partly to court decisions, nontrade or nonbusiness expenses are not deductible, although nontrade or nonbusiness income is fully subject to tax. The bill corrects this inequity by allowing all of the ordinary and necessary expenses paid or incurred for the production or collection of income or for the management, conservation or maintenance of property held for the production of income. Thus, whether or not the expense is in connection with the taxpayer's trade or business, if it is expended in the pursuit of income or in connection with property held for the production of income, it is allowable.

.     .     .     .     .

". . . The expenses, however, of carrying on a transaction which does not constitute a trade or business of the taxpayer and is not carried on for the production of income or for the management, conservation, or maintenance of property, but which is carried on primarily as a sport, hobby, or recreation are not allowable as nontrade or nonbusiness expenses.

"Expenses, to be deductible under section 23 (a) (2), must be ordinary and necessary, which rule presupposes that they must be reasonable in amount and must bear a reasonable and proximate relation to the production or collection of income, or to the management, conservation, or maintenance of property held for that purpose.

"A deduction under this section is subject, except for the requirement of being incurred in connection with a trade or business, to all the restrictions and limitations that apply in the case of the deduction under section 23 (a) (1) (A) of an expense paid or incurred in carrying on any trade or business." *Id.*, at 46, 75. To the same effect, see S. Rep. No. 1631, 77th Cong., 2d Sess., at 87–88.

*Commissioner,* 325 U. S. 365, 374; *McDonald* v. *Commissioner,* 323 U. S. 57, 61–63.

Inasmuch as the ordinary and necessary character of the legal expenses incurred in the instant case is not questioned, their deductibility turns wholly upon the nature of the activities to which they relate.[8]  The first issue, therefore, is whether petitioner's gifts, and the legal expenses related to them, were made for the "production or collection of income" within the meaning of § 23 (a)(2). Generally a gift is the antithesis of such production or collection because it reduces the donor's resources whether income producing or not.  However, petitioner suggests that although he stated in his gift tax return that the purpose of his gifts was to express his love for the donees, yet the gifts were part of a general plan to produce income for himself.  In support of this, he points out that the gifts consisted of 1,000 shares of stock in a closely held family corporation of which he is the president and in which he retained personal ownership of about 2,000 like shares, and that one of the donees, his son, is now actively identified with the corporation and is one of its directors.[9]

---

[8] For cases resulting in the nondeductibility of legal expenses, see e. g., *Croker* v. *Burnet,* 61 App. D. C. 342, 62 F. 2d 991 (C. A. D. C. Cir., *en banc*) (defending suit to have taxpayer's husband declared incompetent and to set aside his transfer of property to taxpayer); *Dickey* v. *Commissioner,* 14 B. T. A. 1295 (defense against suit for malicious prosecution); *Joyce* v. *Commissioner,* 3 B. T. A. 393 (defense of validity of postnuptial agreement); *Oransky* v. *Commissioner,* 1 B. T. A. 1239 (defense and settlement of action for death due to negligence of taxpayer's minor son using taxpayer's automobile).  See *Kornhauser* v. *United States,* 276 U. S. 145, for an example of legal expenses held deductible as business expenditures rather than personal ones.

[9] The record shows that the corporation was organized in 1910 by petitioner's elder brothers and was originally engaged in the cattle, ranching and meat packing business.  Later it engaged in extensive steamship and stevedoring operations through a subsidiary.  While

The District Court did not find that these facts, or anything else in the record, provided an adequate basis for reclassifying petitioner's stock transfers and his payment of a related legal fee as expenditures for the production of income, rather than as gifts accompanied by an ordinary and necessary attorney's fee for contesting the amount of a federal gift tax treating the stock transfers as gifts. The Court of Appeals, on review of the entire record, expressly held that the transfers were gifts and that the attorney's fee was not proximately related to the production of income. That court then applied to the attorney's fee the interpretation of § 23 (a) (2) approved in *Cobb* v. *Commissioner, supra.* We agree to the applicability of that interpretation which disallows the fee as a deduction from taxable income.[10]

Similarly, there is no substantial factual basis here for treating the stock transfers and the related attorney's fee as mere incidents of petitioner's "management, conservation, or maintenance of property held for the production of income." Even assuming that petitioner's 3,000 shares in Lykes Brothers, Inc., did constitute property originally held by him for the production of income, there is no finding, and no adequate basis for a finding,

---

it was a large enterprise with numerous stockholders besides petitioner, his wife and children, the stock never had been on the open market. It was held by sons, nephews and sons-in-law of the Lykes brothers. It was the practice of the brothers to foster in this way a continuity of family ownership and management. At the time of petitioner's gift of 1,000 shares of common stock, there were outstanding about 25,000 shares of that class of stock.

[10] The issue here is distinguishable from that in *Bingham's Trust* v. *Commissioner, supra.* In that case the legal expenses were incurred partly in contesting an income tax deficiency assessed against the taxpaying trust and partly in winding up the trust after its expiration. All of those expenses were integral parts of the management or conservation of the trust property for the production of income and, as such, deductible under § 23 (a) (2).

that his donation of one-third of that stock actually was not the gift he represented it to be. Petitioner does not claim that the gift itself is deductible and, if it, as the principal item in the transaction, is not deductible, we find no adequate basis in this record for holding the related attorney's fee deductible.

II. Legal expenses do not become deductible merely because they are paid for services which relieve a taxpayer of liability. That argument would carry us too far. It would mean that the expense of defending almost any claim would be deductible by a taxpayer on the ground that such defense was made to help him keep clear of liens whatever income-producing property he might have. For example, it suggests that the expense of defending an action based upon personal injuries caused by a taxpayer's negligence while driving an automobile for pleasure should be deductible. Section 23 (a)(2) never has been so interpreted by us. It has been applied to expenses on the basis of their immediate purposes rather than upon the basis of the remote contributions they might make to the conservation of a taxpayer's income-producing assets by reducing his general liabilities. See *McDonald* v. *Commissioner, supra,* at 62–63.

While the threatened deficiency assessment of nearly $150,000 added urgency to petitioner's resistance of it, neither its size nor its urgency determined its character. It related to the tax payable on petitioner's gifts, as gifts, and it was finally settled on an agreed revaluation of the securities constituting those gifts. The expense of contesting the amount of the deficiency was thus at all times attributable to the gifts, as such, and accordingly was not deductible.

If, as suggested, the relative size of each claim, in proportion to the income-producing resources of a defendant, were to be a touchstone of the deductibility of the expense

of resisting the claim, substantial uncertainty and inequity would inhere in the rule. For example, the expense of defending a personal injury suit for negligence, or a suit for alienation of affections, claiming $1,000 damages, probably would not be a deductible expense for any defendant. On the other hand, if the same plaintiff on the same facts asked for $5,000, $10,000 or $100,000 damages, and the defendant held some income-producing property, that defendant might be permitted to deduct from his taxable income the same expense for precisely the same services as those upon which his less well-to-do neighbor would have to pay a tax in the other case. It is not a ground for defense that the claim, if justified, will consume income-producing property of the defendant. We find no such distinction made or implied in the Revenue Act.

III. While the Treasury Regulations, in 1944, did not refer to the issue now before us, they were consistent with the position we have taken.[11] Furthermore, since 1946, T. D. 5513, 26 CFR § 29.23 (a)–15 (k), has unequivocally stated that legal expenses incurred by an individual in the determination of gift tax liability are not deductible. That interpretation of § 23 (a)(2) appears in the following language:

> "Expenses paid or incurred by an individual in determining or contesting any liability asserted against him do not become deductible . . . by reason of the fact that property held by him for the production of income may be required to be used or sold for the purpose of satisfying such liability. Thus, *expenses paid or incurred by an individual in the determination of gift tax liability,* except to the extent that such expenses are allocable to interest on a refund of gift taxes, *are not deductible, even though prop-*

---

[11] Treas. Reg. 111, § 29.23 (a)–15 (b).

*erty held by him for the production of income must be sold to satisfy an assessment for such tax liability* or even though, in the event of a claim for refund, the amount received will be held by him for the production of income."   (Emphasis supplied.)

Such a regulation is entitled to substantial weight.   See *Commissioner* v. *South Texas Co.,* 333 U. S. 496, 501; *Morrissey* v. *Commissioner,* 296 U. S. 344, 355; *Fawcus Machine Co.* v. *United States,* 282 U. S. 375, 378.   Since the publication of that Treasury Decision, Congress has made many amendments to the Internal Revenue Code without revising this administrative interpretation of § 23 (a) (2).   See Revenue Act of 1948, c. 168, 62 Stat. 110; Revenue Act of 1950, c. 994, 64 Stat. 906; Revenue Act of 1951, c. 521, 65 Stat. 452; *Higgins* v. *Commissioner, supra,* at 216; *Morrissey* v. *Commissioner, supra,* at 355.

The judgment of the Court of Appeals accordingly is

*Affirmed.*

MR. JUSTICE BLACK dissents.

MR. JUSTICE JACKSON, whom MR. JUSTICE FRANK-FURTER joins, dissenting.

Lykes made a gift of corporate stock to his children. It was a legitimate transaction, duly reported for gift-tax purposes and a tax of over $13,000 paid thereon.   By overvaluing the stock which had been given, the Commissioner asserted a gift-tax deficiency of $145,276.50, of which about $130,000 was found by the Tax Court to be unjustified.   But, to protect himself against the Government's unjustified claim, Lykes spent $7,263.83 for legal services.

I am unable to understand why this payment was not deductible as being an expense incurred "for the management, conservation, or maintenance of property held for the production of income."   Had the taxpayer yielded to

128

the Government's unjustified demand, it would have de-
pleted his capital by about $130,000 and thenceforward
he could not have enjoyed income from it.   Of course, it is
not the amount but the principle that is significant.   In-
deed, the burden of legal expense is likely to be in inverse
proportion to the amount of the deficiency asserted.
Here the expense was only about 5% of the saving.   In
small cases of small taxpayers the percentage will be far
greater and in many may exceed 100%.   Certainly contest
against unwarranted exaction, regardless of its amount or
outcome, is for the conservation of property and its rea-
sonable cost is deductible.

A majority of my brethren seem to think they can es-
cape this conclusion by going further back in the chain of
causation.   They say the cause of this legal expense was
the gift.   Of course one can reason, as my brethren do,
that if there had been no gifts there would have been no
tax, if there had been no tax there would have been no
deficiency, if there were no deficiency there would have
been no contest, if there were no contest there would have
been no expense.   And so the gifts caused the expense.
The fallacy of such logic is that it would be just as possible
to employ it to prove that the lawyer's fees were caused
by having children.   If there had been no children there
would have been no gift, and if no gift no tax, and if no
tax no deficiency, and if no deficiency no contest, and if
no contest no expense.   Hence, the lawyer's fee was not
due to the contest at all but was a part of the cost of hav-
ing babies.   If this reasoning were presented by a tax-
payer to avoid a tax, what would we say of it?   So treach-
erous is this kind of reasoning that in most fields the law
rests its conclusion only on proximate cause and declines
to follow the winding trail of remote and multiple
causations.

As for the Treasury Regulation, I would not give it one
bit of weight.   The Treasury may feel that it is good

public policy to discourage taxpayers from contesting its unjustified demands for taxes and thus justify penalizing resistance. It is hard to imagine any instance in which the Treasury could have a stronger self-interest in its regulation. I cannot put my finger on a case where we have said that this reason would avoid Treasury Regulations. But we have disregarded them when they were not consistent with the statute, and that seems to be the case here. I think Congress allows a taxpayer to protect his estate, even against the Treasury. It seems to me a tacit slander of the Nation's credit that need for money should drive us to such casuistry as this.