Carmen J. CARUSO and Josephine A. Caruso, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 627–63.

United States District Court
D. New Jersey.

Nov. 25, 1964.

Robert R. Ross, Trenton, N. J., for plaintiffs.

David M. Satz, Jr., U. S. Atty., by Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., for defendant.

LANE, District Judge.

This is an action for the recovery of income tax which plaintiffs claim was erroneously and illegally collected by the United States. Jurisdiction is founded upon 28 U.S.C. § 1346.[1]

The facts from which the controversy arises are stipulated by the parties as follows:

1. On January 24, 1958, plaintiff, Carmen J. Caruso, took the examination for Assistant Building Inspector held by the New Jersey Civil [Service] Commission. Plaintiff passed first on the examination and was certified No. 1 on the List of Eligibles on August 15, 1958. There was a then existing vacancy for the position in question. Carmen J. Caruso is a veteran.

2. New Jersey Statutes 11:27–4, N.J.S.A. provide in part as follows: " * * * the appointing authority shall appoint the veterans whose standing is the highest on the register for the position to be filled."

3. At the request of the municipality involved, namely, Hamilton Township, Mercer County, New Jersey, plaintiff's name was removed from the List of Eligibles by the Chief Examiner of the Civil Service Commission. Plaintiff then hired counsel and instituted legal proceedings toward reinstatement. A hearing was held at the Civil Service Commission which resulted in a successful conclusion for plaintiff and plaintiff's name was restored to the top of the List of Eligibles.

4. Hamilton Township then sought judicial review by taking an appeal to the Appellate Division of the Superior Court of the State of New Jersey. This Court affirmed the action of the Civil Service Commission and contin-ued plaintiff's certification as No. 1, and as a result thereof, plaintiff was appointed to the position of Assistant Building Inspector for the municipality.

5. The legal costs involved in prosecuting plaintiff's case amounted to $3,-600.00.

6. Plaintiff assumed the position in December, 1959, and was employed for the full year 1960 in this capacity. The legal fees of $3,600.00 which were incurred were billed to the plaintiff in 1960 and paid by him in 1960.

7. The plaintiff reported a full year's income from the capacity of Assistant Building Inspector for the year 1960 and on Page 2 of Form 1040, under the category of "Itemized Deductions," listed as a deduction the $3,600.00 fee paid to his attorneys. The defendant disallowed this deduction and this deduction is the sole basis for the refund claim involved in the instant suit.

While the circumstances presented here do not fall within any clear tax deduction, that is, one specifically exempting the particular expenditure by Mr. Caruso, neither is it readily apparent that Caruso's outlay is not deductible under the general but nonetheless express provisions of sections 162 and 212 of the Internal Revenue Code.[2] As observed in a recent Fifth Circuit opinion, "the exact line of demarcation" between deductible and non-deductible expenses incurred in litigation is not always a perceptible one. Morgan's Estate v. C.I.R., 332 F.2d 144, 150 (5th Cir. 1964). In an attempt to ascertain these often elusive boundaries, the following guidelines are laid down by the Fifth Circuit:

"[The court] must look to the issues involved, the nature and objectives of

---

1. In pertinent part:
"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
"(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws; * * *."
28 U.S.C. § 1346 (1962).

2. 26 U.S.C. § 162 (1955), as amended, 26 U.S.C. § 162 (Supp.1963); 26 U.S.C. § 212 (1955).

the suit in which the expenditures were made, the defenses asserted, the purpose for which the claimed deductions were expended, the background of the litigation, and all facts pertaining to the entire controversy out of which the disputed expenses arose." Id. at 151.

This court feels the above standards are especially appropriate to the litigation at bar. Extensive research has revealed no case exactly in line with or dispositive of the facts herein presented.

In determining the deductibility of Mr. Caruso's expense, it is of particular importance to note that he had properly qualified for the first place on the Civil Service List of Eligibles, and that New Jersey law made his subsequent appointment mandatory. Thus, although Caruso had no "job" in the usual sense, there was a position or *status* to be protected. Also, by way of plaintiff's eventual attainment, under law, of the job in question, the *status* of being in line for a compulsory appointment did have some relation to the production of future income.

Section 162 of 26 U.S.C. reads in pertinent part:

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business—"

Denying the applicability of this section, the government has argued that plaintiff was not engaged in any trade or business at the time of the controverted expenditure.[3] It has long been recognized, however, that the performance of services as an employee does constitute such a trade or business within the meaning of the income tax statutes. The employee is deemed to be in the "business" of earning his pay. Noland v. C.I.R., 269 F.2d 108, 111 (4th Cir. 1959). See also 2 C.C.H. 1964 Stand.Fed. Tax Rep. ¶ 1342. The clearest and most familiar examples of this deduction occur in the realm of travel and entertainment expenses. 26 C.F.R. §§ 1.162–1, 1.162–2, 1.162–17 (1961), as amended, 26 C.F.R. §§ 1.162–1, 1.162–17 (Supp.1964). But the spirit and effect of section 162 have carried even further. Thus, by a recently re-enacted Revenue Ruling, agency fees paid to secure employment are permissible deductions by an employee. Rev. Rul. 223, 1960–1 Cum.Bull. 57.[4] While there appears to be some question as to the bounds of this allowance, it seems well settled that such expenditures directly resulting in employment will so qualify. Thomas W. Ryan, 28 P-H Tax Ct.Rep. & Mem.Dec. ¶ 59,131 (1959).

A further ramification of section 162 affords taxpayer a credit for outlays incurred to preserve existing business. Once again, taking "business" under the statute to include the performance of services for a salary, this aspect of the section can be seen in the regulations and cases dealing with educational expenses. See, e. g., Brooks v. C.I.R., 274 F.2d 96 (9th Cir. 1959). The former specifically allow deduction where the additional education is "imposed as a condition to the retention by the taxpayer of his salary, status, or employment." 26 C.F.R. § 1.162–5(a) (2) (1961). Legal expenses particularly qualify under this preservation theory of business deductions. For example, attorney's fees have been held deductible by a corporation officer when defending against an effort to remove him from control and management. Ingalls v. Patterson, 158 F.Supp. 627 (N.D. Ala.1958); Stanley v. Waldheim, 25 T.C. 839 (1956); E. L. Potter, 20 B.T.A. 252 (1930). Similarly in the Tax Court case of Annie Laurie Crawford, 5 T.C. 91 (1945), petitioner was allowed to deduct legal expenses incurred in re-establishing

---

3. Trial Brief for the Defendant [United States of America], p. 5; Supplemental Brief for the Defendant, p. 8.

4. O.D. 579, 3.Cum.Bull. 130 (1920), reaffirmed by the 1960 ruling above, reads as follows:

"Fees paid to secure employment are considered allowable deductions for the purpose of computing net income subject to tax."

her right to act as co-executor of an estate following state court disqualification. The opinion in Annie Laurie Crawford indicates that the litigation costs were deductible *both* as section 162 business expenses and as section 212 non-business expenses. Id. at 94.

The court must, therefore, initially determine whether plaintiff as the number-one eligible for a civil service position falls within the legal framework defined above.

■■ The general test for a section 162 deductible expense has been stated many times by the Tax Court. "The crucial and controlling factor lies in determining whether the acts done and expenditures made were motivated by a purpose to protect or to promote the taxpayer's business or were made as an investment in a new enterprise." Cubbedge Snow, 31 T.C. 585, 591 (1958). The theory of this test seems apparent. The federal government is willing to encourage an expense necessary to maintain an existing income-producing activity. It does not, however, intend to allow deductions for every potential income-producing activity. In the first case, the government is in effect looking after its own income interest; in the latter, it would be absorbing the costs of mere speculation.

Clearly, on the facts before this court, Caruso was protecting his eligibility status. He was endeavoring to preserve an already present employment advantage; and in so doing he acted in a manner not unlike one incurring an educational expense to maintain his job, or an executor of an estate or corporation officer litigating to protect their respective positions.

■ Accepting Caruso's desire to protect his job eligibility, was this alone sufficient to meet the trade or business requirement of section 162 as manifest in actual employment? In answering this question affirmatively, this court places great weight on the unique presence of the Civil Service System.

Employment within the framework of Civil Service is provided for in New Jersey by both constitutional and statutory law.[5] According to these provisions, appointments are to be made on the basis of merit and fitness as determined by competitive examination. The state constitution and statutes also expressly defer to veteran status in Civil Service selection.[6]

---

5. Art. 7, § 1, ¶ 2 of the New Jersey Constitution reads:

"Appointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive; except that preference in appointments by reason of active service in any branch of the military or naval forces of the United States in time of war may be provided by law."

Relevant statutory provisions affecting county and municipal appointment include:

11 N.J.S. 21–1, N.J.S.A. (1960).

"No appointing authority shall select or appoint a person for appointment, employment, promotion or reinstatement except in accordance with this subtitle and the rules and regulations prescribed thereunder."

11 N.J.S. 21–3, N.J.S.A. (1960).

"Appointments to and promotions in the civil service of a county, municipality or school district which has heretofore adopted the civil service act of 1908 or which shall hereafter adopt the provisions of this subtitle shall be made only according to merit and fitness, to be ascertained, as far as practicable, by examinations, which as far as practicable shall be competitive."

6. See N.J.Const. Art. 7, § 1, ¶ 2, *supra*, note 5. 11 N.J.S. 27–4, N.J.S.A. (1960) provides:

"The Civil Service Commission shall certify to the appointing authority the names and addresses of the three candidates willing to accept employment standing highest upon the register for each position to be filled, and such appointing authority shall select one of the three so certified; *provided, however*, that whenever the name or names

The public policy behind Civil Service has been many times articulated by the New Jersey judiciary. Speaking for a unanimous Supreme Court, Chief Justice Vanderbilt summed the theory as follows:

> " * * * We must bear in mind that the primary object and the purpose of the civil service law is to secure for government, state, county and municipal, efficient public service in all its many functions. The welfare of the people as a whole, and not specifically or exclusively the welfare of the civil servant, is the basic policy underlying the law; * * *."
> Borough of Park Ridge v. Salimone, 21 N.J. 28, 44, 120 A.2d 721, 729 (1956).

To thus assure the effectuation of this strong policy, mandatory appointment founded on statutory qualification has been provided. If Caruso's primary eligibility were not the near-equivalent of actual employment, the viability of the Civil Service program would be seriously diminished.

It should be pointed out also that the state system of Civil Service in no way conflicts with the rule or supremacy of federal law, McCulloch v. Maryland, 4 Wheat. (17 U.S.) 316, 427, 4 L.Ed. 579 (1819), as it might refer to the power of the United States to lay and collect taxes. Rather, it is suggested that the peculiar circumstances of Civil Service eligibility operate to satisfy the business expense deduction established by Congress under section 162. Additionally, respecting this point, the federal tax law historically has been construed to operate within the prescriptions of state law and state policy. Tank Truck Rentals v. Commissioner, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed. 2d 562 (1958).[7] To disallow this deduction, particularly in light of the validity of taxpayer's eligibility status as vindicated by the decisions of both the Civil Service Commission and the Appellate Division of the Superior Court of New Jersey, would be to disregard the policy and intent of the Civil Service System. That public policy is best protected in the recognition of Civil Service eligibility or status as a *quid pro quo* for employment itself. New Jersey law strongly reflects such an attitude.

Finally, regarding the applicability of section 162, once recognizing Mr. Caruso's status as a "business," it follows that the expense incurred to preserve the status was both ordinary and necessary under the law. Commissioner v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943); Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505 (1928); Trust of Bingham v.

---

of a veteran or veterans shall be among those certified to the appointing authority the choice of the appointing authority shall be limited to the veteran or veterans whose name or names are included in such certification; whenever the names of two or more veterans shall be amongst those certified to the appointing authority, the appointing authority shall appoint the veteran whose standing is the highest on the register for the position to be filled."

7. In Tank Truck, the Supreme Court ruled that state imposed fines for violation of maximum weight laws were not deductible by truck owners as "ordinary and necessary" business expenses. The court felt that if such were allowed, sharply defined state policies, as evidenced by penal statutes to protect highways and the persons using them, would be frustrated.

While in the instant case there is present a clearly defined state policy under the constitution and laws cited *supra*, the laws are of civil rather than penal effect. The Third Circuit has heretofore refused to extend the doctrine of frustration to statutes "purely civil in nature." Farnsworth v. C. I. R., 270 F.2d 660, 664–665 (3d Cir. 1959). A further distinction might rest with the fact that in Caruso disallowance rather than deduction has resulted in the frustration.

Yet it would seem that the crux of this federal accommodation to state policy is found in the *frustration* of policy regardless of how effected by the tax statute. There appears to be little reason, given this test, why New Jersey's construction and interpretation of its Civil Service law should not operate to influence the applicability of deductible tax expenses.

Comm'r., 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945).[8]

Since this court has already found a deduction under section 162 available to plaintiff, it would normally rule on that section alone. Much argument, however, has been forwarded by both parties as to the applicability of 26 U.S.C. § 212. That section reads in pertinent part:

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

"(1) for the production or collection of income; * * *."

Against implementation of section 212 the government attack is two-fold. It argues (1) general inapplicability under the history and interpretation of the statute, and (2) express disallowance by the tax regulations.

With reference to the first contention, the government, citing McDonald v. Commission, 323 U.S. 57, 61, 65 S.Ct. 96, 98, 89 L.Ed. 68 (1944), avers that section 212 was enacted "to afford relief for a specifically defined inequitable situation which had become manifest by the decision of the Court in Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783." [9] In the Higgins decision the Supreme Court disallowed costs incurred in the management of personal investments as a business expense despite the fully taxable nature of the resultant income.

The cases, however, show section 212 to be of somewhat broader scope and effect. Among the latest and most comprehensive treatments of section 212 and its predecessor section, 26 U.S.C. § 23(a) (2) (1952), is United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). In Gilmore, where respondent was suing for a tax refund on the ground that legal expenses incurred by him in successfully defending divorce litigation

were deductible, the Court offers this statutory interpretation:

"As noted in McDonald v. Commissioner, 323 U.S. 57, 62, 65 S.Ct. 96, 98, 89 L.Ed. 68, the purpose of the 1942 amendment [§ 23(a) (2)] was merely to enlarge 'the category of incomes with reference to which expenses were deductible.' And committee reports make clear that deductions under the new section were subject to the same limitations and restrictions that are applicable to those allowable under § 23(a) (1) [§ 162]. Further, this Court has said that § 23(a) (2) [§ 212] 'is comparable and in pari materia with § 23(a) (1),' providing for a class of deductions 'coextensive with the business deductions allowed by § 23 (a) (1), except for' the requirement that the income-producing activity qualify as a trade or business. Trust of Bingham v. Commissioner, 325 U.S. 365, 373, 374, 65 S.Ct. 1232, 1237, 89 L.Ed. 1670.

"A basic restriction upon the availability of a § 23(a) (1) deduction is that the expense item involved must be one that has a business origin. * * * The pivotal issue in this case then becomes: was this part of respondent's litigation costs a 'business' rather than a 'personal' or 'family' expense?" Id. at 45–46, 83 S.Ct. at 627–628.

As a guideline for resolving this issue the Court—after citing Lykes v. United States, 343 U.S. 118, 72 S.Ct. 585, 96 L.Ed. 791 (1951), Kornhauser v. United States, supra, and Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940)—propounds the following test:

"The principle we derive from these cases is that the characterization, as 'business' or 'personal,' of the litigation costs of resisting a claim depends on whether or not the

---

8. See also E. L. Potter, 20 B.T.A. 252 (1930); Stanley v. Waldheim, 25 T.C. 839 (1956); Annie Laurie Crawford, 5 T.C. 91 (1945) discussed *supra;* and generally, cases and materials collected

at 4 Mertens, Law of Federal Income Taxation (rev. ed. 1960) § 25.09.

9. Supplemental Brief for the Defendant, p. 4.

claim *arises in connection with* the taxpayer's profit-seeking activities." United States v. Gilmore, supra, 372 U.S. at 48, 83 S.Ct. at 629.

Hence, "the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test * * *." Id. at 49, 83 S.Ct. at 629.

Assuming these standards, the case for deduction under section 212 is a persuasive one.

■ On the facts at bar, the origin of Mr. Caruso's claim lay in an effort to re-establish his legal right to the number-one position of Civil Service eligibility for the job of Assistant Building Inspector. This situation is much more analogous to expenses incurred to protect existing income interests, than to the Gilmore situation where the genesis of the claim was in the marital relation. Thus, once again referring to the unique circumstances of Civil Service presented above, and applying the *in pari materia* interpretation respecting the relation between section 212 and section 162 as discussed in Gilmore, it is the judgment of this court that the nature of Caruso's suit does meet the Gilmore test. Surely in litigating, plaintiff fills the role of "the seeker after profit" more aptly than that of "a creature satisfying his needs as a human and those of his family." Id. at 44, 83 S.Ct. at 626–627.

■■ Nor is it necessary under section 212 that actual income be produced or collected in the year of the deductible expense, so long as the outlay is "proximately" related to the hoped-for or expected income. See various authorities collected in 4 Mertens, Law of Federal Income Taxation (rev. ed. 1960) § 25A.07 at 13–15. As in the instance of section 162, it lastly is apparent that Caruso's legal payments were both ordinary and necessary with reference to the attainment of his income-producing job. Commissioner v. Heininger, Kornhauser v. U. S., Trust of Bingham, Stanley v. Waldheim, Annie Laurie Crawford,

supra; see generally 4 Mertens, supra, § 25A.05 at 6–8.

Tax regulation § 1.212–1(f) [26 CFR (1961)] expressly prohibits "expenses such as those paid or incurred in seeking employment or in placing oneself in a position to begin rendering personal services for compensation." The government argues forcefully that this regulation precludes allowance of Mr. Caruso's legal outlays:

"There is a series of Tax Court cases dealing with the types of expenses which are deductible under Section 212. In Frank v. Commissioner, 20 T.C. 511, the taxpayer incurred expenses in attempting to locate a suitable business to purchase and from which he *hoped*, of course, to derive income. The deduction was disallowed and on a petition for re-determination the Tax Court approved the disallowance. The court was of the opinion that there is a basic distinction between allowing deductions for expenses of producing or collecting income in which one has an *existent interest or right,* and expenses incurred in an *attempt to obtain income by the creation of a new interest.* Mr. Caruso's successful attempt to gain reinstatement to the list of eligible was not an attempt to produce or collect income from an already existent interest. It was, rather, an attempt to place himself in a position to be appointed to a new job.

"* * *

"* * * A deduction for such expenses does not come within the purposes of the statute, and is clearly prohibited by the regulations." [Emphasis added.] Trial Brief for the Defendant. pp. 8–9.

This court agrees with the government's construction of section 212 and its accompanying regulation that expenses sustained in an attempt to establish, obtain, or otherwise innovate a potential income-producing or collecting activity should result in non-deduction. It cannot, however, place in the same legal con-

text the circumstances of the Frank case, and the facts at bar. For in the present instance, Mr. Caruso was acting to protect and preserve an already existent employment interest. There was little speculation or risk involved as to the ultimate outcome of plaintiff's primary eligibility under Civil Service. Caruso was awarded the Assistant Building Inspector post by direction of the constitution and laws of New Jersey. The fact that he was temporarily barred from asserting his right in no way altered the inevitability of the job and the resultant income.

Finally, an important issue must be met concerning the function of this trial court. The government has rightfully asserted the familiar doctrine of New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934), to the effect that "deductions are a matter of legislative grace," and, therefore, must be specifically allowed by statute. Yet, here the court is not so much confronted with finding the actual statutory vehicles for deduction, as it is with ascertaining the meaning and bounds of those vehicles. The court is not establishing new deductions, but merely interpreting the existing allowances. In searching for the "line of demarcation" in this altogether unique factual setting, it has had to carefully scrutinize the meaning of "ordinary and necessary," and "trade or business," in the light of both the cases and the overall tax policies of the United States.

By protecting his Civil Service standing, Mr. Caruso assured himself and the federal government of future income. Conversely, if he had not litigated his rights under law, on the undisputed facts before this court, neither the federal government nor Caruso would presently be reaping the rewards of the employment in issue. On these facts, Civil Service standing is an employment equivalent to be protected under section 162. On these facts, the origin of taxpayer's expense is proximately related to income production under section 212. To rule otherwise would defeat the strong

policies underlying the federal revenue laws, for in this instance the government would be depriving itself of an income which was scarcely, if at all, in doubt.

This court therefore finds the legal expenses incurred by plaintiff Caruso to be deductible under both section 162 and section 212 of the Internal Revenue Code. Accordingly, it holds the taxes collected by the United States contrary to these provisions, erroneous and illegal.

Plaintiff is to submit a form of order.