HI-WAY DISPATCH, INC., Plaintiff,

v.

**UNITED STATES of America, Defendant.**

Civ. No. 1:93CV–0283.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

July 21, 1994.

Lawrence A. Jegen, III, Indianapolis, IN, and Jay D. McShurley, Somerset, KY, for plaintiff.

Deborah M. Leonard, U.S. Attys. Office, Fort Wayne, IN, Jon E. DeGuilio, Crown Point, IN, and Peter Sklarew, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

### I. INTRODUCTION

This matter is before the Court on two motions: (1) a Motion to Dismiss by the Defendant, United States of America ["the Government"], filed March 7, 1994 and (2) a Cross–Motion for Summary Judgment by the Plaintiff, Hi–Way Dispatch, Inc. ["HWD"] filed April 4, 1994. The Government's Motion to Dismiss, which the Court will consider a Motion for Summary Judgment, is GRANTED. HWD's Cross–Motion for Summary Judgment is DENIED.

### II. MOTION TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Although the Government filed a Motion to Dismiss, the Court will consider it as a Motion for Summary Judgment. When matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss for failure to state a claim is converted into a motion for summary judgment. See FED.R.CIV.P. 12(b)(6). Ordinarily, notice should be given when converting a motion to dismiss to a motion for summary judgment. Malak v. Associated Physicians, Inc., 784 F.2d 277, 280–281 (7th Cir.1986). However, both Hi–Way Dispatch and the Government have submitted matters outside the pleadings—specifically, affidavits and memoranda, and both have requested (the Government, alternatively) that summary judgment be granted. Clearly then, the parties understood that summary judgment would be the Court's vehicle for deciding the case.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), requiring the court to grant a directed verdict where there can be but one reasonable conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the nonmoving party's position is insufficient to successfully oppose summary judgment. Id. at 252, 106 S.Ct. at 2512 ("there must be evi-

dence on which the jury could reasonably find for the Plaintiff."); *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is insufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2510–12. However, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

Substantive law determines which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. FED. R.CIV.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512.

## III. *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

HWD is in the long distance trucking business and hauls freight in the midwest. While delivering their shipments, HWD drivers are frequently required to travel long distances, necessitating periodic rest and sleep stops in sleeper cab-tractors. In 1987, HWD purchased diesel fuel and paid excise taxes on the fuel it purchased, pursuant to 26 U.S.C. § 4041.[1]

In order to assert entitlement to an excise tax refund or credit, HWD installed on-board computers in each tractor to measure the amount of diesel fuel consumed while its engines were idling during driver sleep/rest periods. During these idling stops, the computers were set so that they would only begin registering idling fuel consumption after the truck had been stopped for ten to fifteen minutes.[2] Using the on-board com-

---

1. Although Congress has since renumbered sections of the Internal Revenue Code and the accompanying Treasury Regulations, the text of each section has remained essentially the same. The Court adopts, for purposes of clarity, the section numbers as they existed in 1987, the year the cause of action accrued.

2. Although HWD is ambiguous as to the exact number of minutes at which its computers are set to record idling time, the Court does not find this to be a material issue of fact as to preclude summary judgment. The time at which the computers are set to register would not be a dispositive issue at trial.

puters, HWD calculated that it paid $11,-522.25 in excise taxes for fuel consumed while its diesel tractors were registered as idling.

HWD filed a claim with the Internal Revenue Service ["IRS"] on December 9, 1988, seeking a refund of $11,522.25 in taxes asserting that the fuel had been consumed in a non-taxable use, and thus was exempt from excise taxes. Initially, the IRS allowed HWD's claimed credit; however, on October 30, 1991, after investigation the IRS demanded repayment for an "erroneous refund." HWD repaid the IRS, and in this action challenges the IRS' ruling claiming a refund of $11,552.25 plus costs.

## IV. DISCUSSION

■ The issue presented is whether the consumption of diesel fuel in a parked idling tractor-trailer as calculated by an on-board computer is an "off-highway business use" such that the operator is entitled to a refund for the fuel excise tax paid pursuant to 26 U.S.C. § 6427.[3] HWD claims that it is entitled to an "off-highway business use exemption," because the fuel for which it demands credit was consumed off of the highway. The Court concludes that HWD is not entitled to such an exemption and is not entitled to the claimed refund.

### A. Statutory Analysis

Title 26, section 4041(a)(1), as written in 1987, imposed a diesel fuel tax, while section 4041(b) provided certain exemptions from the tax. Section 4041(b) stated in pertinent part:

(1) Exemption for off-highway business use.—

(A) In general.—no tax shall be imposed by subsection (a) or (d)(1) on liquids sold for use or used in an off-highway business use.

\* \* \* \* \* \*

(C) Off-highway business use defined.— For purposes of this subsection, the term "off-highway business use" has the meaning given to such term by section 6421(d)(2).

Congress thus allowed an exemption for "off-highway business use." As section 4041(b)(1)(C) states, in order to be eligible for an exemption, the fuel must be consumed in an "off-highway business use" as defined by section 6421(d)(2). Section 6421(d)(2) provided in pertinent part that "off-highway business use" was defined as:

any use by a person in a trade or business of such person or in an activity of such person described in section 212 (relating to production of income) *otherwise than as a fuel in a highway vehicle—*

(i) *which (at the time of such use), is registered, or is required to be registered, for highway use under the laws of any State* or foreign country, or

(ii) which in the case of a highway vehicle owned by the United States, is used on the highway.

(emphasis added).

The plain meaning of the statute is determinative of this dispute. The fuel for which HWD demands credit was consumed "in a highway vehicle," registered "for highway use under the laws" of Indiana. As the statute provides, fuel used "in a highway vehicle," registered "for highway use under the laws of any State" does not qualify as "off-highway business" usage. Because 26 U.S.C. § 4041(b) merely provides exemption for "off-highway business use" as defined by section 6421(d), and because HWD's vehicles are excluded from the exemption by section 6421(d), HWD is not entitled to an exemption given the plain meaning of the statute.

HWD also argues that the "off-highway business use" exemption as set forth in section 6421(d), is inconsistent with the statutory exemption for off-highway farm vehicles.[4] HWD stresses that while farmers are eligible

---

**3.** The Court notes that HWD also relies on 26 U.S.C. § 34. Section 34(a)(2) provides an exemption for fuel used "under section 6421." Thus, for the purposes of this case, Section 34 is substantively identical to section 6421. Therefore, the Court will only address Section 6421.

**4.** Under 26 U.S.C. § 6427(c), fuel used "on a farm for farming purposes" is exempt from excise taxes.

for an exemption even if they consume fuel in a highway vehicle, truckers are not. This argument is without merit. The statutory exemption for fuel used on farms, unlike the exemption at issue here, does not define farm use so as to exclude consumption in a highway vehicle. While the farm use exemption tolerates consumption in highway vehicles, the "off-highway business use" exemption precludes such use. As the two statutes have distinctly different terms, the Court cannot accept HWD's argument and finds that the farm use exemption and "off-highway business use" exemption are not inconsistent. Therefore HWD's inconsistency argument merely directs the Court to the differences in the two statutes, and does not persuade the Court to grant the exemption. HWD's use of fuel does not fall within exemptions outlined by the statute. ·

### B. *Analysis of Treasury Regulations*

■ The Court finds further support for the Government's position in the relevant Treasury Regulations. When interpreting a provision of the Internal Revenue Code, courts are to give great deference to the Treasury Regulations. *See, e.g., Lykes v. United States,* 343 U.S. 118, 127, 72 S.Ct. 585, 590, 96 L.Ed. 791 (1952). The Treasury Regulations provide useful insights for statutory interpretation. An interpretive regulation "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes" and "should not be overturned except for weighty reasons." *Commissioner v. South Texas Co.,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948). The applicable treasury regulations further demonstrate that it would not be appropriate to grant HWD's exemption.

■ First, the applicable Treasury Regulations do not themselves define "off-highway business use," but direct the Court back to 26 U.S.C. § 6421. According to 26 C.F.R. 48.4041–2(c)(3), the tax "applies to all fuel sold for use in a diesel-powered highway vehicle unless the diesel fuel is sold for use

or used in an 'off-highway business use' as defined in section 6421(d)(2)." As noted *supra,* section 6421(d)(2) precludes an exemption if the fuel is consumed in a highway vehicle, so HWD's use of fuel does not qualify for the off-highway exemption under 26 C.F.R. 48.4041–2(c)(3).

Second, the Treasury Regulations provide that HWD's idling fuel consumption is taxable. For instance, 26 C.F.R. 48.4041–7 states, in pertinent part, that taxes apply to all

> liquid fuel sold for use or used as a fuel *in the motor which is used to propel a diesel-powered vehicle* or in the motor used to propel a motor vehicle, motorboat, or aircraft, *even though the motor is also used for a purpose other than the propulsion of the vehicle,* motorboat, or aircraft. (emphasis added).

As the fuel used to heat and cool HWD's tractors is consumed in the motor used "to propel a diesel-powered vehicle" the Treasury Regulations demonstrate that it is immaterial whether "the motor is also used for a purpose other than the propulsion of the vehicle." Thus, under section 48.4041–7, taxes apply to HWD's use of fuel.

Third, section 48.4041–7 also provides that even if separate motors consume the fuel at issue, taxes still apply. HWD argues that since idling fuel is ultimately used to run the heating and cooling engines and not to propel the tractor, this consumption falls within the "off-highway business use" exemption.[5] HWD is correct that according to 26 C.F.R. 484041–7, taxes do not apply "to liquid fuel sold for use or used in a separate motor to operate special equipment (whether or not the equipment is mounted on the vehicle)." This would suggest that fuel consumed by separate engines is exempt from excise taxes. However, the regulation goes on to say that "if the taxable liquid fuel used in a separate motor is drawn from the same tank as the one which supplies fuel for the propulsion of the vehicle," taxes are appropriate. Thus,

---

5. In its briefs, HWD's reference to separate motors is a bit misleading. The Court agrees with the Government that HWD's reference does not refer to independent motors, but more likely to electrical motors run from its main propulsion

engines. Even if HWD's assertion were true, this argument is without merit because the fuel was consumed in a highway vehicle, thus precluding an exemption under section 6421(d).

because the fuel powering the separate motors is "drawn from the same tank that supplies fuel for the propulsion of the vehicle," taxes apply. Therefore, even if HWD's fuel consumption is not devoted to propelling its tractors, applicable Treasury Regulations demonstrate that HWD is ineligible for an exemption.

## C. *Review of the Legislative History*

In addition to not qualifying for the exemption under the relevant statute and regulations, an examination of the legislative history behind the exemption statute (26 U.S.C. § 6421(d)), demonstrates that Congress did not intend to include HWD's use of fuel within the "off-highway business use" exemption. For instance, the Congress originally enacting the statute stated that the exemptions provided for such "diesel-powered highway vehicle[s] [that are] *never operated* or used on the highways." S.REP. No. 1965, 84th Cong., 2d Sess. 2783 (1956) (emphasis added). Since HWD's vehicles are *always* operated and used on highways, legislative history demonstrates that Congress did not wish to exempt such use. Further, in amending section 6421 in 1988, Senator John Warner stated that the exemptions originally enacted in 1956 and codified in 26 U.S.C. § 6421 "are provided because it was generally believed that those categories [of off-highway users] could be easily identified ..." 134 Cong.Rec.S. 2265, S. 2265. If easy identification was Congress' intent, it seems clear that this Court should not broaden the list of exemptions by adopting a definition of "off-highway business use" which is not easily identifiable. Thus, relying on the intent of Congress, the Court holds that HWD's idling use of diesel does not fall within the "off-highway business use" exemption.

## D. *Public Policy Considerations*

HWD argues that advances in computer technology have rendered the Government's regulations obsolete. Although HWD's argument is interesting, the Court finds that, after giving due deference to the Treasury Regulations, HWD's argument attacking the regulations should be made to Congress. As the Supreme Court held in *Norwest Airlines v. Transport Workers Union of America,* "[o]nce Congress addresses a subject, even a subject previously governed by federal common law, the justification for lawmaking by the federal courts is greatly diminished. Thereafter, the task of the federal courts is to interpret and apply statutory law, not to create common law." 451 U.S. 77, 95 n. 34, 101 S.Ct. 1571, 1582–83 n. 34; *accord Arizona v. California,* 373 U.S. 546, 565–566, 83 S.Ct. 1468, 1480–81, 10 L.Ed.2d 542. As the discussion from the previous section illustrates, because Congress has addressed the "off-highway business use" exemption in much detail, it would be inappropriate for this Court to expand the statute to fit HWD's request. Although HWD is correct to point out that when the statute at issue was enacted in 1956, computer technology was unable to measure fuel consumption during idling, this alone is not enough to convince the Court that it should rule in HWD's favor. This is an argument that should be presented to the Congress.

## V. *CONCLUSION*

For the foregoing reasons, the Government's Motion to Dismiss, converted into a Motion for Summary Judgment is GRANTED, while Highway Dispatch, Inc.'s Cross-Motion for Summary Judgment is DENIED.