W. E. STIVERS and T. Opal Stivers, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

H. L. STIVERS and Mabel Stivers, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 16354, 16355.

United States Court of Appeals Sixth Circuit.

April 22, 1966.

**36**

Charles Speed Gray, Louisville, Ky., for petitioners, Dougherty, Schilling & Gray, Louisville, Ky., of counsel.

Herbert Grossman, Dept. of Justice, Washington, D. C., for respondent, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harold C. Wilkenfeld, Donald W. Williamson, Jr., Attys., Dept. of Justice, Washington, D. C., on the brief.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

This is an appeal from a decision of the Tax Court involving "stale bread" losses claimed by the taxpayers as wholesale distributors of bakery products made at Berea College, Berea, Kentucky. In an unreported memorandum opinion (T.C. Memo 64–165, filed June 16, 1964), the Tax Court sustained the action of the Commissioner in disallowing the claimed losses and in determining deficiencies for the years 1956, 1957, and 1958. The petitioners, W. E. Stivers and H. L. Stivers, will be referred to herein as the "taxpayers" or the "Stivers brothers."

As found by the Tax Court:

"Berea College is a small liberal arts college in Berea, Kentucky, which charges no tuition and minimum student fees. The students help pay their expenses through a student labor program which requires all students to work at least 10 hours a week in student industries operated by the college. There are a number of such activities each of which is operated as a separate department of the college with a superintendent in charge of each department. The products and services of these departments are offered for sale to the public.

"The only products of the college which are sold through retail outlets, other than those operated by the college, are bakery and dairy products. H. L. and W. E. Stivers are brothers and have carried on the distribution of these products for many years. This distributorship was begun by their father and was continued by them as a family business."

The College operates its bakery and dairy as a part of its student industries program, that is, for the purpose of "making work" and providing jobs for students. Although it is feasible to use students as workers in the College bakery, dairy and other student industries, it was not found practicable to use them in the distribution of bakery and dairy products to retailers. Therefore the College entered into contracts with the fa-

ther of taxpayers, and later with the taxpayers, for the distribution of these products.

Earlier in the proceedings the Commissioner took the position that the Stivers brothers were employees of the College. On this appeal, however, no issue is made as to the fact that they occupied the status of independent contractors for all the years herein involved.

Under their contract with the College, the replacement of stale bread with fresh bread on the shelves of retailers was the responsibility of the Stivers brothers. The route men were required to replace stale bread with fresh bread at no cost to the retailers and to deliver the stale bread to the Stivers brothers. The taxpayers maintained a stale bread outlet at their warehouse, where these products were sold at reduced prices. By utilizing this procedure they were able to recoup approximately one-half the wholesale price of bread. The net loss was borne by them and not by the College. The litigation involves losses sustained by the Stivers brothers in the handling of stale bread during the taxable years 1956, 1957 and 1958.

On June 9, 1954, the Stivers brothers entered into two contracts with the College, one for the distribution of dairy products and the other for the distribution of bakery products. The bakery contract is attached as Appendix A to this opinion.

The Tax Court made the following findings with respect to the operations of taxpayers under this contract:

"Pursuant to the terms of this contract, bakery products were picked up each day by the distribution trucks. At this time a debit would be made to the account carried by Berea College as a receivable from the Stivers brothers for the wholesale price of goods placed on the trucks. Credits to this account receivable were made for all cash receipts and approved credit sales remitted to Berea College by the Stivers brothers. The latter were treated as cash sales pursuant to the contract. The petitioners were paid weekly commissions by checks issued by the college according to the commission rates established in the contracts.

"On Schedule C of the Federal income tax returns for the years in question the Stivers brothers took the following deductions as 'stale losses':

"H. L. Stivers

| Taxable Year | Stale Loss Deduction |
|---|---|
| 1956 | $14,031.91 |
| 1957 | 13,028.37 |
| 1958 | 11,334.14 |

"W. E. Stivers

| | |
|---|---|
| 1956 | 12,267.56 |
| 1957 | 14,293.20 |
| 1958 | 14,437.24 |

"The Stivers' drivers or route men would be consigned a certain amount of bread each day. They would be forced to pick up some stale bread from the various retailers and replace it free of charge with fresh bread. This stale bread was turned in to the Stivers' warehouse which had a stale outlet that sold the bread at half price.

\* \* \* \* \* \*

"The Stivers brothers did not abide by all of the conditions of their contract with Berea College. They did not turn over the funds daily as required; they did not turn over the monthly reports; and they were unable to execute a surety bond. This nondeposit of daily receipts was done with the full

knowledge and acquiescence of the college. Petitioners used these withheld funds chiefly to pay the operating expenses of the distribution business and to cover the losses in question. Also the college occasionally advanced funds to the Stivers brothers to help them buy rolling stock. These advances were evidenced by notes secured by chattel mortgages. The record does not disclose the amounts of these advances in the years before us.

"Each of the Stivers brothers maintained books and records of his business as a wholesale distributor. They employed a bookkeeper who kept the records and prepared their tax returns on the cash basis of accounting. Their income was determined from commission statements received from Berea College. All expenses were paid in cash, and there was no carry-over at the end of the year and no accrued expenses.

"It is not clear from the evidence exactly when and how much the Stivers brothers paid Berea College. It is clear, however, that petitioners withheld some of the receipts from the sale of bread. The withholding was consistent and built up the Stivers indebtedness to Berea over the years in question as follows:

| Date | Indebtedness of W. E. Stivers | Indebtedness of H. L. Stivers |
| --- | --- | --- |
| December 31, 1955 | $ 9,260.94 | $13,531.70 |
| December 31, 1956 | 35,957.82 | 24,240.95 |
| December 31, 1957 | 56,605.88 | 54,454.94 |
| December 31, 1958 | 92,136.60 | 84,171.28 |

\* \* \* \* \* \*

"The policy of extending credit to the Stivers brothers was established in 1942 or 1943. The substantial increase in the debit balances of these accounts from 1955 through 1958 was due to a combination of circumstances which compelled the Stivers brothers to withhold cash receipts. They were encountering increased competition from privately operated bakeries, and their stale losses were quite high. Also, they were not receiving adequate commissions, and this situation was not rectified until a new contract was executed on November 14, 1960."

The gross amount of credit given to the route men on the books of the taxpayers for stale bread was reduced by the revenue received from the sale of this bread. The taxpayers contend that the balance of the price of this bread was supplied by checks drawn by the taxpayers and issued to the route men, who in turn deposited the checks with the College. The stale bread losses claimed by the taxpayers are based upon these checks. This is the manner in which they arrived at the stale loss figures claimed as a deduction.

The bookkeeper for the taxpayers, who prepared most of the tax returns here involved, testified concerning the stale bread transactions as follows:

"Q. Do you recall a deduction in their returns for stale loss?

"A. I do.

"Q. Would you describe to the Court the manner in which that item was accounted for in the books and records of the Stivers Brothers during the years in question?

"A. The Stivers' truck operators or route men would be consigned with a certain amount of bread each day. In their routes they would be forced to pick up some stale bread from the various retailers and replace it with fresh bread. That caused their route men to have a shortage in making their accounting to the treasurer's office at the end of each workday, so each Mr.

Stivers issued a check at the end of each week to the individual route men so that they could make an accounting.

"Q. Who, the Stivers or the route men?

"A. The route men.

"Q. How was that transaction reported in the books?

"A. There was a check to support— a check issued to each driver and this was double entry, went to the stale loss account.

"Q. Did that represent the gross loss on the stale bread?

"A. Yes, sir, and the Stivers maintained at their warehouse a stale outlet in which they sold the merchandise at half price. Then this revenue that came in from such sales was recorded in the stale loss account therefore giving a net loss account.

"Q. Was it the net loss for the year that was deducte.. in each of the returns?

"A. Yes, that's what appears on Schedule C."

Cross examination:

"Q. Mr. Davis, in regard to the stale loss, what happened to the checks which were given to the drivers?

"A. They used the checks to make proper accounting at the treasurer's office.

"Q. Did they turn over those checks to Berea College?

"A. I don't know about that, sir.

"Q. Did they turn any of the checks into Berea College?

"A. I assume they did.

"Q. Were, to your knowledge, any of the checks just endorsed and returned to Mr. Stivers?

"A. That, I don't know."

In rejecting the claimed losses, the Tax Court said:

"There was some testimony by the Stivers' bookkeeper to the effect that at the end of each week a check was issued to the route men by the Stivers to cover the net stale losses so that the route men could make an accounting. However, it was not shown what the route men did with the checks, and it was later brought out that this testimony was based on assumption and not personal knowledge."

In its Memorandum Sur Order the Tax Court said:

"Petitioners did not allege in their petitions that they had paid the stale bread losses they seek to deduct but rather claimed therein that they 'were required to, and they did, assume and absorb as expense the losses arising out of the sale of stale merchandise at less than cost.' * * *

"In his reply brief respondent also urged that the record fails to establish that the stale losses claimed by the petitioners were in fact paid during the taxable years in issue. The petitioners' present posture, as well as the arguments contained in the petitioners' original brief, demonstrates that the parties are in agreement that as cash basis taxpayers the petitioners are not entitled to deduct the claimed stale bread losses unless in fact those losses were paid in the years here involved.

"At the outset we can but observe that we do not have before us any issue as to the deductibility of amounts paid to reduce the petitioners' debt to Berea College. We have before us only the question of stale bread losses claimed for 1956, 1957 and 1958.

"We have carefully reviewed all of the evidence and exhibits once more and are unable therefrom to conclude that petitioners did pay their losses in those years as they now contend they did. * * *

* * * * * *

"How stale bread losses or any other losses from sales can be claimed where the evidence discloses that a cash basis taxpayer has not paid for the product sold is beyond our comprehension. * *

"While there is some evidence that might be regarded as indicating that the petitioners paid their route men by checks for stale bread losses, the

testimony being that checks were issued to the route men, there is no evidence whatever to show what happened to these checks. This testimony indicated that these checks were issued to the route men weekly."

Thereafter the taxpayers entered a motion for leave to supplement the record by filing as exhibits the originals of 205 cancelled checks totalling $13,866.22 issued during 1956, 212 cancelled checks totalling $22,928.24 issued during 1957, and 208 cancelled checks totalling $25,-364.38 issued during 1958. All of these checks are a part of the appellate record, although the Tax Court refused to consider them as evidence or to reconsider its decision which was based on its interpretation of the above-quoted testimony of the bookkeeper. These checks were drawn by W. E. Stivers on his bank account at the Berea Bank & Trust Company. They were payable to the order of the various route men and bore the notation "stale loss". The checks are shown to have been endorsed by the payee route men and also by Berea College and the endorsements indicate that they were deposited to the credit of the College.

During the oral argument at the bar of this court, counsel for taxpayers stated that similar checks issued by H. L. Stivers and handled in identically the same manner have been lost or destroyed but that he is prepared to prove by other evidence the making of payments to route men by H. L. Stivers.

The Commissioner argues that these checks were filed too late and that the Tax Court was correct in refusing to consider them as evidence. The taxpayers contend that the above-quoted testimony of their accountant shows that actual payments were made to these route men and that these payments were deposited by the route men with the College; that no objection was made to this evidence nor was any proof offered to contradict it; that if there had been any indication of a question being raised on this issue, the checks would have been introduced at that time so as to establish these facts

conclusively; and that the Tax Court therefore should have received the checks in evidence, and should have reconsidered its decision in the light of the facts established by them.

■ The record indicates that these checks were available in the courtroom at the time the proof was taken. We think that the taxpayers were justified in concluding that introduction of the checks was not necessary in the absence of some factual challenge by the Commissioner. Not until the announcement of the decision of the Tax Court could the taxpayers have been aware that the Court would base its findings upon the statements of the bookkeeper on cross-examination to the effect that he did not have actual knowledge that the College received the checks from the route men.

■ There are four primary requirements that must be met as a basis for the allowance of a loss deduction: "(1) there must be an actual loss sustained; (2) the loss must be one sustained by the taxpayer; (3) the loss must be one sustained in a closed transaction during the taxable year; and (4) the loss must not be compensated for by insurance or otherwise." 5 Mertens, Law of Federal Income Taxation, § 28.04 (1963).

■■ A cash basis taxpayer cannot establish a loss unless it was sustained in the year in which it is claimed. The burden of proving the loss is upon the taxpayer. Lykes v. United States, 343 U.S. 118, 120, 72 S.Ct. 585, 96 L.Ed. 791; Interstate Transit Lines v. Commissioner of Internal Revenue, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607; Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991.

"Since the statute requires that the taxpayer demonstrate that he has in fact sustained a loss, and further that he show that such loss was sustained in the taxable year, there is a very substantial burden of proof which the taxpayer must meet. The most bothersome, and accordingly the most irritating portion of this burden, is the

need for demonstrating the realization of the loss within the particular taxable year." 5 Mertens, Law of Federal Income Taxation, § 28.01 (1963).

"Since deductions have been generally interpreted as being matters of legislative grace, the burden of proof rule has been applied with inexorable force to loss claims." 5 Mertens at § 28.03 (1963).

We have examined the above described checks of W. E. Stivers which were offered as exhibits. From what is shown on the face of these checks and the endorsements thereon, it appears that there is more than a "mere chance," American Propeller & Manufacturing Co. v. United States, 300 U.S. 475, 480, 57 S.Ct. 521, 81 L.Ed. 751, that this taxpayer will be able to establish the actual payment of these checks to the College.

We vacate the decision of the Tax Court and remand the case for the taking of additional evidence on this point. 28 U.S.C. § 2106; 5 Am. Jur. 2d Appeal & Error § 972 (1962).

On remand, the Tax Court is directed to admit the foregoing checks into evidence and consider them in determining whether or not W. E. Stivers actually sustained the claimed losses during the years for which they are asserted. Additionally, the Tax Court is directed to receive and consider any competent evidence offered by the taxpayers as to the payments made for stale bread losses by H. L. Stivers during the taxable years in question.

■ The Tax Court further held that, even if the taxpayers paid the stale bread losses during the years in question as indicated by said checks, nevertheless they were not entitled to the claimed deductions because their indebtedness to Berea College exceeded the stale bread losses during each of the years in question. The Court reasoned that since the taxpayers had not paid the College for all the fresh bread picked up by them, and were indebted to the College throughout the three taxable years involved, they are not entitled in any event to deductions for stale bread losses. The Court concluded that the taxpayers "withheld more than sufficient receipts to pay all of their stale losses and thus these losses were, in effect, paid with Berea College's money, not by petitioners'." The Tax Court treated the payments for stale bread losses as having been made, in effect, out of money borrowed from the College.

The basic premise of the Tax Court is supported by a sound principle of the law of income taxation. Helvering v. Price, 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836; Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 75 L.Ed. 911. We hold that this principle is not necessarily applicable under the unique facts of the present case. The primary purpose of Berea College seems to have been to provide jobs for students and not to sell bakery products for a profit. For reasons satisfactory to itself, the College permitted the Stivers brothers to withhold part of the receipts from the sale of fresh bread, rather than negotiating a new contract in the light of mounting operating costs and competition from other bakeries. The Stivers brothers were permitted to become heavily indebted to the College. The bona fides of this indebtedness does not seem to be questioned in the record before this court. For reasons satisfactory to the College the handling of stale bread appears to have been treated as a transaction separate and distinct from fresh bread and dairy products. If the stale bread losses in fact were incurred by the taxpayers during the taxable years in question, we hold that the allowance of the deduction is not foreclosed by the fact that the taxpayers did not liquidate their total indebtedness to the College during those years.

Vacated and remanded.

### Appendix A

THIS CONTRACT this day made and entered into by and between Berea College, H. L. Stivers, and W. E. Stivers, all of Berea, Madison County, Kentucky, each with the other,

WITNESSETH: That H. L. Stivers is the owner of the following described trucks:

One 1951 1-ton International Truck
Two 1947 1-ton International Trucks
One 1950 1-ton Dodge Truck
One 1947 1-ton Chevrolet Truck
One 1948 1-ton G.M.C. Truck, used as a spare.

W. E. Stivers is the owner of the following described trucks:

One 1950 International Metro Panel ¾-ton truck

One 1949 Chevrolet Panel ¾-ton truck

One 1952 International Metro Panel ¾-ton truck

One 1950 Dodge Panel ¾-ton truck

One 1949 Dodge Route Van ¾-ton truck used as an extra.

all of which are now being operated for the delivery, distribution and sale of bakery products of Berea College. The said H. L. Stivers has made, constituted and appointed, and does hereby make, constitute and appoint the said W. E. Stivers, his true and lawful attorney-in-fact, for him and in his name, place and stead, to operate and have operated the aforesaid trucks owned by H. L. Stivers, carry on the delivery, distribution and sale of bakery products of Berea College, on his behalf under the terms of this contract, lease said trucks to Berea College and carry on and conduct every phase and activity for the delivery, distribution and sale of bakery products for Berea College; collect the receipts going to him therefor, and receipt for the same, and carry out all the terms and conditions contained in this contract.

Said W. E. Stivers in consideration of One Dollar ($1.00) and other valuable considerations, hereby rents and leases all of the aforesaid trucks owned by W. E. Stivers and H. L. Stivers to Berea College beginning at date hereof and continuing until this contract is terminated. This agreement may be terminated by either W. E. Stivers or Berea College, by one of them giving the other a six months written notice of his or its intentions to terminate the same; and shall be deemed to be terminated six months from date of delivery or service of such written notice. Failure to give such written notice shall be regarded by the injured party as a just cause against the other, from any and all damages resulting therefrom.

W. E. Stivers is to operate said trucks for the delivery, distribution and sale of bakery products of Berea College, and any other products of Berea College that may hereafter be agreed upon. He shall not transport any merchandise or products except such as is owned by Berea College. He is to keep all of said trucks in good condition, at his expense, and replace said trucks whenever it is necessary to do so at his expense. If any additional trucks are needed in said business of selling, transporting, delivering and distributing said bakery products he is to purchase such trucks as are necessary to properly carry on a profitable business, and all new trucks purchased by him, either as replacements or additional trucks, shall be deemed to be leased to Berea College under this agreement, and shall come within the terms and conditions of this contract. All trucks purchased by W. E. Stivers shall be upon the written approval of Berea College as to size and appearance.

Each truck shall be kept insured at all times for $50,000.00 bodily injury to one person, $100,000.00 bodily injury to two or more persons and $5,000.00 property damage, in any one accident. W. E. Stivers and Berea College shall each pay one-half of the premiums based upon a $25,–$50,000.00, $5,000.00 policy, and Berea College shall pay the additional premiums. Workmen's Compensation Insurance shall be carried at all times and W. E. Stivers and Berea College shall each pay one-half of the premiums.

All trucks are to be kept clean and attractively painted at the expense of W. E. Stivers. The color of the trucks and all signs and advertising thereon shall be approved by Berea College. W. E. Sti-

vers is to operate the following delivery routes:

1. Lexington No. 1, consisting of the South side of Lexington and Georgetown.
2. Lexington No. 2, to Winchester and Mt. Sterling.
3. Lexington No. 4, Lexington only.
4. Lexington No. 6, Nicholasville, Wilmore, Harrodsburg, Lawrenceburg and Versailles.
5. Richmond.
6. Berea.
7. Manchester.
8. Danville.
9. London.

These routes are mapped, said map being in the possession of Berea College and same is made a part of this contract. W. E. Stivers is to operate such additional routes as may hereafter be designated by Berea College.

All drivers, truck operators and delivery men shall be well paid, and have ability as salesmen, shall be courteous, and neat and clean at all times during their working hours.

W. E. Stivers agrees to pay all wages, salaries, taxes, license fees, office expenses, upkeep and maintenance, and all other expenses of said sales and distribution business.

W. E. Stivers is to give his personal attention to said business, and he is to devote his time to properly conducting and carrying it on, and for its profit and advantage.

W. E. Stivers nor H. L. Stivers shall not mortgage, pledge, or place any lien of any kind, upon any of his trucks, business fixtures or equipment, nor shall he permit the same to be done, except that the same may be mortgaged, pledged, or placed in lien to Berea College.

In the event W. E. Stivers, H. L. Stivers, or either of them becomes insolvent, makes an assignment for the benefit of creditors, becomes a bankrupt, or fails or refuses to conduct and carry on said business or breaches any of the conditions of this contract, Berea College may terminate this contract immediately and without notice, or it may make application for the appointment of a receiver.

All funds collected by W. E. Stivers, his agents and servants, shall be delivered to the Treasurer's Office of Berea College daily. When credit sales are made to customers approved for credit sales by the Credit Department of the Treasurer's Office of Berea College, the sales account shall be delivered to the Treasurer's Office and shall be deemed between the parties hereto as a cash sale.

In consideration therefor and as full compensation to W. E. Stivers, Berea College agrees to pay him 23½% of the net sales of bakery products on the aforesaid Danville, Manchester, and London routes; and is to pay him $50.00 per week, transport truck expense, and a commission of 21½% of the net sales of bakery products on all the other routes.

It is agreed that one per cent (1%) of these net sales is to be set aside and held by Berea College as a depreciation reserve fund to be used for the purchase of new trucks, or such other purposes as may be hereafter agreed upon. This may be discontinued upon election of Berea College at any time. Failure or refusal of W. E. Stivers to comply with the terms and conditions of this agreement shall result in a forfeiture of the reserve fund then on hand, and the same shall become the property of Berea College.

W. E. Stivers is operating other trucks for the sale of dairy and creamery products of Berea College. Said W. E. Stivers is to keep separate accounts of these two businesses. W. E. Stivers is to have his accountings made and conducted under a certified public accountant supervisory service, and statements of the accounting shall be made at least quarterly and a copy thereof furnished to Berea College, W. E. Stivers, and H. L. Stivers. W. E. Stivers and Berea College are each to pay one-half of said accounting services.

W. E. Stivers agrees to execute a bond with corporate surety, or surety to be ap-

**44**

proved by Berea College in the amount of $10,000.00 for the full and faithful performance of this agreement.

In the event W. E. Stivers should become disabled in any manner so that he can not carry out and perform this contract with Berea College, then H. L. Stivers agrees to carry out and perform the same.

In the event of death of either H. L. Stivers or W. E. Stivers, it is agreed that the survivor of them shall carry out and perform the terms and conditions of this contract and shall have the right and privilege of using the trucks and equipment of the one who has died to do so.

This contract shall not be sold, leased, or sublet by W. E. Stivers.

It is agreed to by H. L. Stivers and W. E. Stivers that at the expiration or termination of this contract, Berea College shall have the right and privilege of purchasing such of the trucks and equipment owned by W. E. Stivers and H. L. Stivers, or either of them, as it may desire. The price to be paid therefor to be fixed by one person selected by H. L. Stivers and W. E. Stivers and one person selected by Berea College, and if these two cannot agree upon a price or prices therefor, the two selected persons shall designate a third person and the price fixed by any two of them shall be the price to be paid.

H. L. Stivers and W. E. Stivers, each agree to execute a will naming an executor therein and autho[r]izing said executor to carry on the aforesaid business under the terms of this contract.

In witness whereof the parties hereto have each signed their names to quadruplicates hereof, each to be considered an original this 9 day of June, 1954.

/s/ W. E. Stivers
/s/ H. L. Stivers
BEREA COLLEGE
By: L. D. Bibbee

WITNESS:
Maude Ledford