**Oswill M. CUMMINGS, Jr., Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 29134.

United States Court of Appeals,
Fifth Circuit.

Feb. 1, 1971.

Rehearing Denied March 10, 1971.

S. P. Keith, Jr., Birmingham, Ala., for petitioner-appellant.

K. Martin Worthy, Chief Counsel, I. R. S., Johnnie M. Walters, Asst. Atty. Gen., Eugene F. Colella, Elmer J. Kelsey, Lee A. Jackson, Jane M. Edmisten, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for respondent-appellee.

Before RIVES, WISDOM and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Taxpayer appeals from the Tax Court's recomputation of deficiencies in his federal income tax for the years 1944 through 1955, made pursuant to our mandate in Cummings v. C. I. R., 410 F.2d 675 (5th Cir. 1969). The facts and applicable law appear in that opinion, and we reiterate them only to the extent necessary.

During the tax years in question, taxpayer was the sole proprietor of Tuscaloosa Motor Express, an intrastate truck line operating under an Alabama Public Service Commission certificate. In the course of his business he received revenues from three types of carriage—regularly scheduled, interline, and C.O.D.— and deposited them to his bank accounts. After depositing the C.O.D. receipts, which included the price of the goods, taxpayer would remit to the consignor the part thereof representing the price. Interline carriage involved goods interchanged between carriers en route from origin to destination, and, after depositing these receipts to his accounts, taxpayer remitted to other participating carriers the amounts due them. The portions of the C.O.D. and interline receipts deposited to his bank accounts and then remitted to consignors or other carriers did not represent income to taxpayer.

Taxpayer failed to file returns or pay income tax for any year between 1944 and 1955. He failed to file declarations of estimated taxes from 1944 through 1954, and he did not pay estimated taxes from 1944 to 1955. He did not maintain, and when faced with an audit could not produce, records from which his taxable income for the years in question could be ascertained. Confronted with these circumstances, the Commissioner has attempted to estimate taxpayer's income.

The only usable information in the Commissioner's possession for the tax years in question consists of the gross

amount of the deposits made by taxpayer to his various bank accounts. On the other hand, the Commissioner does have complete financial data for the years 1956–1962. This includes the gross amount of taxpayer's bank deposits, his net deposits—gross deposits less non-income C.O.D. and interline receipts as well as other incidental non-taxable items—and his net income.

In the proceedings culminating in the earlier appeal, the Commissioner had attempted to estimate taxpayer's income for each year from 1944 through 1955 (to which we shall refer as "the unknown years") by calculating a ratio of average net income-to-average net bank deposits for the model period 1956–58, and applying this ratio to the figures for gross bank deposits made in the unknown years. In the original appeal we held the resulting estimate to be arbitrary and unfair, for, although the ratio was calculated on the basis of *net* bank deposits in the model period, the figures to which it was applied from the unknown years consisted of *gross* bank deposits. 410 F.2d at 679. In that opinion we also suggested two possible alternative methods which, in our view, would yield a rational estimate of taxpayer's net income for the unknown years. Under the first the Commissioner might apply a net income-to-gross deposits ratio for a known model period [1] to gross deposits for the unknown years. Under the second the Commissioner might estimate the proportion of non-income C.O.D. and interline receipts included in the gross bank deposits in some known model period. Reducing the gross bank deposits figures from the unknown years by a similar proportion would, under what has been described as the *Cohan* rule,[2] yield a rational estimate of net bank deposits for the unknown years to which the Commissioner could then apply a net income-to-net deposits ratio derived from the same model period.[3]

Pursuant to our mandate the Commissioner submitted a recomputation which employed a net income-to-gross deposits ratio, based on the model period 1956–62.[4] The Tax Court accepted this recomputation and rejected taxpayer's—which was based on a *Cohan* rule reduction of gross bank deposits and a net income-to-net deposits ratio—and entered judgment for the resulting deficiencies. From this determination taxpayer appeals.

Although tendered in an overlapping fashion, taxpayer appears to assert two distinct grounds of error. First, he contends that our prior decision required the allowance of a *Cohan* rule adjustment of gross bank deposits made in the unknown years. As we have pointed out, this was but one of at least two rational, fair and permissible methods suggested in that decision. Our opinion left it open to the Commissioner to offer, and to the Tax Court to accept, a computation based simply on a net income-to-gross bank deposits ratio, and we are unable to say that an estimate of net income so calculated is arbitrary or unfair. *See* 410 F.2d at 678–679.[5]

---

1. We left it open to the Commissioner to choose 1956–58, 1956–62, or any other period as the model period, so long as the choice was rational. 410 F.2d at 680, n. 14. The Commissioner asserts, and our own observations confirm, that the 1956–62 period employed by the Commissioner on remand was more favorable to taxpayer than 1956–58.

2. Cohan v. Commissioner of Internal Revenue, 39 F.2d 540, 543–544 (2d Cir. 1930).

3. 410 F.2d at 680. In some places the prior opinion (by Judge Rives, who is also a member of this panel) refers in the conjunctive to the use of the *Cohan* rule reductions of gross bank deposits and the use of a net income-to-gross bank deposits ratio. We do not construe the prior opinion to mean that taxpayer would be entitled to both. In his brief on the earlier appeal taxpayer recognized that he was only entitled to one or the other.

4. *See* fn. 1, *supra*.

5. We note in addition that taxpayer's recomputation was clearly incorrect in two respects. It contained no statutory additions to tax. And after estimating net

Taxpayer's second contention is that the Commissioner's recomputation should be rejected because it was based upon figures not in evidence in the original proceeding and to which taxpayer did not stipulate after our remand. Although the Commissioner had complete financial data for the years 1956–62, not all of this was introduced in the Tax Court proceeding. Indeed, since his original calculations were based on a net income-to-net deposits ratio, all that the Commissioner introduced in the original evidentiary hearing were calculations of net income and net bank deposits for the model period, 1956–58, and the gross bank deposit figures for the tax years in question. However, under either method of recomputation suggested in our prior opinion, it became necessary to use at least the gross bank deposit figures for the known model period, which taxpayer acknowledged were in the Commissioner's possession. On remand, therefore, the Commissioner submitted, along with his proposed recomputation, schedules of gross bank deposits, interline and C.O.D. deductions, net bank deposits, and net income for the model period 1956–62. Except for gross bank deposits for the year 1957,[6] the items in the first three schedules had not theretofore been introduced into evidence. But it should be noted that since the Commissioner's recomputation was based on a ratio of net income-to-gross deposits, the only crucial figures not in evidence which he employed were the gross deposit figures for the years 1956 and 1958–62.[7]

Copies of the recomputation and accompanying schedules were served on taxpayer, and he was in possession of them for nearly a month before required to file his own objections and proposed recomputation. His recomputation was based on a *Cohan* rule reduction of gross deposits, which required him to establish a ratio using both the net and gross deposit schedules accompanying the Commissioner's recomputation.

Despite his utilization of these figures, taxpayer also appeared to contend that the schedule of net deposits was inconsistent with figures testified to in the original evidentiary hearing, as indeed they seem to be. However, he did not in terms object to the figures used by the Commissioner on the ground that they were not in evidence. Nor did he contend that the gross deposit figures, which were employed in both his and the Commissioner's recomputations, were inaccurate. He merely asserted that the net deposit figures, which were employed in his recomputation but not in the Commissioner's were inconsistent with prior testimony.[8]

After submission of the proposed recomputations, an opportunity for hearing was afforded the parties before the Tax Court. Taxpayer did not appear. When the Tax Court entered judgment on the Commissioner's recomputation, taxpayer filed his notice of appeal. It is in this court that he initially contends explicitly that the Commissioner's recomputation should be rejected because based on non-evidentiary matters.

Through the haze of prejudicial possibilities which taxpayer has raised before this court, three things remain clear. First, taxpayer never specifically con-

---

bank deposits under the *Cohan* rule on the basis of figures for the model period 1956–62, it then applied a net income to net deposits ratio derived from the model period 1956–58.

6. Testimony as to the gross deposit figures for the year 1957 coincides precisely with the figure contained in the schedule.

7. It is true that while the net income figures for the years 1956–58 were in evidence, those for 1959–62 were not. However, the latter figures were required only

in order to use the model period 1956–62, which was more favorable to taxpayer than 1956–58. *See* fn. 1, *supra.*

8. Indeed, fairly construed, the argument implicit in appellant's recomputation is a glaring non sequitur, asserting that the taxpayer's recomputation—which employs the disputed net deposit figures—should be preferred over the Commissioner's—which does not employ the disputed figures—*because* the disputed figures are possibly inaccurate.

tended before the Tax Court that the Commissioner's schedules were not in evidence, and he bypassed an opportunity for hearing at which he could have challenged the veracity of any figures which he felt were being used to his prejudice. More important, in our view, is the fact that the accuracy of the gross deposit figures employed in the Commissioner's recomputation is not seriously questioned. For while the accuracy of the net deposit figures—not used by the Commissioner—is open to question, the record in this and the prior appeal does not contradict, and in some measure supports [9] the gross deposit figures. Throughout the course of this appeal taxpayer has only once even approached suggesting that these figures might be inaccurate, and that suggestion is no more than colorable.

Finally, in what seems to us to be a recognition of the accuracy of all the figures, taxpayer has unequivocally adopted them for his own purposes. His proposed recomputation employs both the gross deposits figures used by the Commissioner and the net deposits figures which taxpayer contends are inaccurate. Nevertheless, taxpayer has consistently and steadfastly maintained not only that we should set aside the Commissioner's recomputation, but also that we should order his own substituted instead. Indeed, while there is no realistic fashion in which the required recomputation could be made solely on the basis of figures adduced in the original trial,[10] taxpayer has never suggested that the Commissioner's recomputation be vacated and the case remanded for the formal introduction of the gross bank deposits figures. By urging without reservation that his recomputation be accepted, taxpayer has unequivocally adopted these figures for his own purposes. This fact undermines his contention that the Commissioner's use of the

figures is improper, and tends to support the veracity of the figures.

Under the circumstances, we uphold the decision below. We note that this appeal might have been avoided had there been held a brief additional evidentiary hearing. And we recognize that we could yet remand for introduction of the gross bank deposits schedule employed by the Commissioner. *See* Stivers v. C. I. R., 360 F.2d 35 (6th Cir. 1966). But since we have no doubt as to the veracity of the gross deposit figures, and since taxpayer's unhesitating use of them in his own recomputation reinforces our confidence, we think that no useful purpose would be served by such a course.

Affirmed.

9. *See* fn. 6, *supra*.

10. The only model period for which the prior record contains complete figures is the year 1957, and we note that the use

of the 1957 figures alone would yield an estimate of net income greater than that arrived at by the formula which we disapproved in the original appeal.