T.C. Memo. 2003-270

UNITED STATES TAX COURT

MAINTENANCE, PAINTING & CONSTRUCTION, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4904-02.                    Filed September 17, 2003.

<u>Martin A. Grusin</u> and <u>James W. Surprise</u>, for petitioner.[1]

<u>Rebecca Dance Harris</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioner petitioned the Court on
February 26, 2002, to redetermine a $74,543 deficiency in its
Federal income tax for its fiscal year ended May 31, 1997 (1997
taxable year), and a $18,583 addition thereto under section

_____

[1] Counsel for petitioner entered their appearances on
Apr. 28, 2003.

6651(a)(1).[2]  The deficiency and addition to tax were reflected in a notice of deficiency issued to petitioner on November 30, 2001, and result from respondent's disallowance of petitioner's deduction of a $234,265 net operating loss (NOL) carryover from its 1996 taxable year.  Petitioner concedes that it is not entitled to the NOL deduction and alleges in an amendment to petition filed with the Court on June 13, 2003, that it "abandoned certain depreciable assets in the tax year 1997, and is entitled to a deductible loss for the amount of the basis in said assets for that year."  The amendment does not list the amount of the claimed loss but references an amended return prepared by petitioner on August 28, 2002, claiming an abandonment loss of $246,382.  Petitioner asserts in its opening brief that its abandonment loss is actually $169,439.

We decide first whether petitioner may deduct an abandonment loss for the subject year.  We hold it may not.  We decide second whether petitioner is liable for the addition to tax determined by respondent under section 6651(a)(1).  We hold it is.

                        FINDINGS OF FACT

Some facts were stipulated.  The stipulated facts and the accompanying exhibits are incorporated herein by this reference.

---

[2] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code, Rule references are to the Tax Court Rules of Practice and Procedure, and dollar amounts are rounded to the nearest dollar.

We find the stipulated facts accordingly.  Petitioner is a C corporation with a fiscal year ending on May 31.  It specializes in the repair and painting of buildings in the State of Tennessee.  Its mailing address was in Brighton, Tennessee, when its petition was filed.

In 1992, petitioner was awarded a contract (contract) to repair and paint 1,500 service stations in California, Arizona, Nevada, Oregon, Washington, and Alaska.  Petitioner began working on the contract in 1992 and purchased in and around California most of the trucks, automobiles, and other equipment (collectively, equipment) necessary to complete its work under the contract.  The equipment was generally used property purchased at auction.

In 1994, petitioner began storing on a lot (lot) in California some of the equipment that had become inoperable.  The record does not indicate that petitioner documented the assets which it placed on the lot.  On May 31, 1995, petitioner sold some of the equipment located on the lot for $30,000.  Petitioner reported on its Federal income tax return for its 1995 taxable year that it had paid $360,728 for the equipment sold in that transaction, and it claimed a $199,408 loss with respect to the sale.  Petitioner reported on the return that the assets sold in the transaction were "VARIOUS ASSETS--CA" and did not otherwise identify those assets.

Pursuant to the contract, petitioner worked on approximately 300 service stations per year and completed its work in the fall of 1997. Shortly thereafter, petitioner's president, Carlton Laxton (Laxton), went to California and shipped to Tennessee at least some of the equipment remaining on the lot. The record does not indicate that petitioner documented the assets which it shipped to Tennessee. Petitioner later sold some or all of the assets which it shipped from California to Tennessee.

On July 12, 2001, petitioner filed with the Commissioner its Federal income tax return for its 1997 taxable year (1997 return). The 1997 return was prepared by Dan R. Tacker (Tacker), a certified public accountant (C.P.A.), and was signed by Laxton in his capacity as petitioner's president. As of the time of trial, Tacker had been a C.P.A. for almost 20 years, and he had worked for petitioner as its outside accountant for approximately the same amount of years performing audits, tax work, and other services. Tacker stopped working for petitioner as its accountant effective with its operation after May 31, 1997.

Petitioner reported on its 1997 return that its taxable income before NOL deduction was $234,265 and that its NOL deduction was the same. Petitioner had incurred a $621,456 NOL in its 1996 taxable year and applied $206,955, $106,115, and $308,386 of that loss to its 1993, 1994, and 1995 taxable years. Petitioner mistakenly reported on its 1997 return that the NOL in

its 1996 taxable year equaled $659,827, that it had applied that NOL only to its 1993 and 1994 taxable years, and that the NOL was available in part for carryover to 1997 and later years.

On August 28, 2002, Tacker prepared for petitioner an amended Federal income tax return for its 1997 taxable year. The amended return conceded that petitioner did not have a $234,265 NOL to apply to that year and claimed, instead, that petitioner was entitled to deduct a $246,382 abandonment loss. As stated on the amended return: "THE COMPANY SCRAPPED VARIOUS EQUIPMENT USED IN THE CALIFORNIA OPERATION AS OBSOLETE BASED UPON HIGH MILEAGE AND EXCESSIVE USE. THE BASIS OF THE EQUIPMENT (VEHICLES) WAS $246,382 BASED UPON COST MINUS DEPRECIATION."

During this proceeding, Tacker prepared workpapers that were admitted into evidence by stipulation as part of Exhibit 5-J. These workpapers in relevant part list under the category "Assets Abandoned/OBSOLETE" 79 assets the "Unrecovered Cost" (adjusted basis) of which totals $246,382 as of May 31, 1995, and May 31, 1997.[3] Exhibit 5-J also contains a computerized list of approximately 318 depreciable assets owned by petitioner as of May 31, 1995, and used by it in connection with the contract. Of the 79 assets listed on the workpapers, 75 are also shown on

---

[3] According to Tacker, the assets appearing on this workpaper were useless to petitioner after May 31, 1995. Thus, he did not compute any depreciation for these assets after that date.

the computerized lists with a handwritten checkmark placed next to them.  (The other four assets, for which the worksheet reports the total unrecovered cost as $28,214, appear on the computerized list without a checkmark.)  The checkmarks were made by Laxton who reviewed the computerized lists during this proceeding and checked off the assets which petitioner initially asserted were abandoned.  The amounts shown next to the checkmarks and the amounts shown for the just mentioned four assets correspond in total to petitioner's claim that the "unrecovered cost" of the 79 assets totals $246,382 (with rounding).

The Court also admitted into evidence petitioner's Exhibit 8-P.  This exhibit is petitioner's summary of the identity and "unrecovered cost" of the:  (1) 60 assets which petitioner now claims were abandoned in 1997 and (2) 17 assets which petitioner now claims were included in the assets sold in 1995 for $30,000. Exhibit 8-P lists that the unrecovered costs of the assets included in these categories were $169,439 and $61,835, respectively.  The difference between the $246,382 shown on Exhibit 5-J and the $231,274 listed on Exhibit 8-P (i.e., $169,439 + $61,835) is attributable to two assets appearing on the former exhibit but not on the latter.

OPINION

1. <u>Burden of Proof</u>

Taxpayers generally must prove respondent's determination of an income tax deficiency wrong in order to prevail. Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). As one exception to this rule, section 7491(a) places upon the Commissioner the burden of proof with respect to any factual issue relevant to a taxpayer's liability for tax if the taxpayer maintained adequate records, satisfied applicable substantiation requirements, cooperated with respondent, and introduced during the court proceeding credible evidence on the factual issue. A taxpayer such as petitioner must prove that it has satisfied the recordkeeping, substantiation, and cooperation requirements before section 7491(a) places the burden of proof upon the Commissioner. <u>Prince v. Commissioner</u>, T.C. Memo. 2003-247.

We do not find that petitioner maintained adequate records, satisfied applicable substantiation requirements, or cooperated with respondent. Accordingly, we hold that section 7491(a) does not apply here to place the burden of proof upon respondent.

2. <u>Abandonment Loss</u>

Section 165(a) provides a deduction for any loss sustained during the taxable year which is not compensated for by insurance or otherwise. A loss from the abandonment of an asset is within this section if: (1) The owner of the asset intended to abandon

the asset, and (2) the owner in fact abandoned the asset through an affirmative act. United States v. S.S. White Dental Manufacturing Co., 274 U.S. 398 (1927); A.J. Indus., Inc. v. United States, 503 F.2d 660, 670 (9th Cir. 1974); CRST, Inc. v. Commissioner, 92 T.C. 1249, 1257 (1989), affd. 909 F.2d 1146 (8th Cir. 1990); see also United Dairy Farmers, Inc. v. United States, 267 F.3d 510, 522 (6th Cir. 2001). The amount of the loss on an abandonment of depreciable property equals the property's adjusted basis at the time of abandonment. Secs. 1.165-2(c), 1.167(a)-8(c)(4), Income Tax Regs.

Petitioner's burden of proof requires that it establish: (1) It intended to abandon specific assets during its 1997 taxable year, (2) it in fact during that year abandoned those assets through an affirmative act, and (3) its adjusted bases in the assets. See Burnett v. Houston, 283 U.S. 223, 227 (1931); Stivers v. Commissioner, 360 F.2d 35, 40-41 (6th Cir. 1966). Petitioner has not proven any of these elements. Although Laxton testified that he intended on behalf of petitioner to abandon any equipment placed on the lot which was not taken back to Tennessee, we are hard pressed to determine on the basis of the record at hand that any specific asset actually was abandoned. Although petitioner may in fact have left on the lot one or more pieces of the equipment, we are unable to find (and have serious doubt) that petitioner actually knew what pieces of the equipment

were or were not left there.  The record contains no contemporaneous documentation as to the equipment which was placed on the lot, or the equipment on the lot that was eventually shipped to Tennessee.  Petitioner relies predominantly on the workpapers prepared by Tacker to establish the equipment which it claims was abandoned, as well as on the conclusory testimony of Tacker and Laxton to the effect that those workpapers are accurate.  The probative value of these workpapers is minimal, as is the referenced testimony.  In addition to the fact that the workpapers were prepared during this proceeding, Tacker testified that his knowledge as to the specific assets which he showed thereon as abandoned was derived entirely from Laxton.  Laxton, in turn, offered no clear explanation as to why he believed these workpapers were accurate, although he was specifically asked to do so upon cross-examination.

We also question the accuracy of Exhibit 8-P when we examine the specific assets shown thereon which petitioner claims were useless after May 31, 1995, and abandoned in 1997.  For example, as to those assets, the exhibit lists that petitioner purchased a 1987 truck during its 1995 taxable year at a cost of $22,588.  This truck cost substantially more than the numerous other trucks used by petitioner on the contract, and petitioner generally used each of those other trucks for more than 1 year.  We are hard pressed on the record at hand to conclude that the 1987 truck was

of no use to petitioner after May 31, 1995, and was abandoned by it in 1997.  In fact, by petitioner's count, almost all of its vehicles were not used by it after that date and were abandoned in 1997.  Given that petitioner makes no claim that it abandoned any vehicle purchased after May 31, 1995, that the record does not persuade us that petitioner in fact purchased any vehicles after that date, and that approximately 40 percent of petitioner's work on the contract remained to be performed after May 31, 1997, we decline to accept petitioner's implication that it finished its work on the contract with virtually no vehicles. We sustain respondent's determination as to the deficiency.[4]

3.  <u>Addition to Tax</u>

Section 6651(a)(1) imposes an addition to tax for failing to file a return on or before the due date unless it is shown that this failure is due to reasonable cause and not due to willful neglect.  Reasonable cause may exist if a taxpayer exercised ordinary business care and prudence and was nonetheless unable to file the return within the date prescribed by law.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect means a

_____

[4] In so doing, we also note that Laxton testified that he ascertained in the fall of 1997 the equipment that would be left in California.  This being so, petitioner's claimed loss on the abandonment of that equipment was not deductible by it for the subject year. <u>CRST, Inc. v. Commissioner</u>, 92 T.C. 1249 (1989) (taxpayer that alleged an intent to abandon asset in a year was precluded from deducting an abandonment loss for that year because it did not show that it actually abandoned the asset in that year), affd. 909 F.2d 1146 (8th Cir. 1990).

"conscious, intentional failure or reckless indifference."
United States v. Boyle, 469 U.S. 241, 245 (1985).

Respondent bears the burden of production with respect to this addition to tax. Sec. 7491(c). In order to meet this burden, respondent must produce sufficient evidence that it is appropriate to impose this addition to tax. Once respondent has done so, the burden of proof as to reasonable cause or other mitigating factors is upon petitioner. Higbee v. Commissioner, 116 T.C. 438, 446-447, 449 (2001).

Respondent has satisfied his burden of production with respect to the addition to tax in that the record establishes that petitioner filed his 1997 tax return after its due date. Petitioner must establish reasonable cause in order to prevail. Id. Petitioner filed the subject tax return approximately 4 years after its due date, and petitioner has not presented any evidence establishing that the failure to file that return timely was due to reasonable cause and not due to willful neglect. We sustain respondent's determination as to the addition to tax.

_____

All arguments made by the parties and not discussed herein have been rejected as without merit.

Decision will be

entered for respondent.