T.C. Memo. 2018-75

UNITED STATES TAX COURT

SLAWOMIR J. FIEDZIUSZKO AND ALICIA M. FIEDZIUSZKO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15229-15.                          Filed May 31, 2018.

Slawomir J. Fiedziuszko and Alicia M. Fiedziuszko, pro sese.

<u>Nicholas R. Rosado</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  In a notice of deficiency dated March 10, 2015, respondent

determined a deficiency of $31,407 in petitioners' Federal income tax for 2012

[*2] and a penalty under section 6662(a) of $6,226.[1]  The issues for decision after concessions are:  (1) whether Mr. Fiedziuszko was a statutory or a common law employee; (2) whether petitioners are entitled to deduct expenses on Schedule C, Profit or Loss From Business; (3) whether petitioners are entitled to deduct $16,322 of medical and dental expenses; (4) whether petitioners are entitled to deduct $28,237 of charitable contributions; (5) whether petitioners had unreported pension income of $35,630; and (6) whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.  Petitioners resided in Palo Alto, California, at the time the petition was timely filed.

I.  Mr. Fiedziuszko's Consulting Business

In 2012 Mr. Fiedziuszko was a semiretired aerospace engineer and worked as a consultant for Space Systems Loral (Loral).  Mr. Fiedziuszko found work as a consultant by attending conferences and traveling to visit potential clients.  He

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the year in issue.  Rule references are to the Tax Court Rules of Practice and Procedure, and dollar amounts are rounded to the nearest dollar.

[*3] entered a contract to provide consulting services to Loral through West Valley Engineering Co. (West Valley), a temporary employment agency used by Loral to hire consultants. Mr. Fiedziuszko's contract with Loral began in 2011 and ended in July 2012. He worked primarily from home on a satellite development project, Flexible Satellite, producing reports and components for Loral. West Valley made weekly deposits into petitioners' checking account under the entry "West Valley Engi Payroll", which included a date that was two days before the actual deposit and the last four digits of Mr. Fiedziuszko's Social Security number. Thus, the deposit made on January 13, 2012, included a date "120111". Most weeks the deposit was $2,649, although there was some variation. The last deposit was made on August 3, 2012.

West Valley processed Mr. Fiedziuszko's pay for his work for Loral and withheld Federal income tax as well as Social Security and Medicare taxes. West Valley did not offer medical or dental insurance, paid vacation leave, or reimbursement of Mr. Fiedziuszko's expenses, but it did offer a deferred compensation plan.

West Valley checked the statutory employee box on Mr. Fiedziuszko's 2011 Form W-2, Wage and Tax Statement, to indicate that he was a statutory employee

[*4] for 2011. But West Valley did not check the box on Mr. Fiedziuszko's 2012 Form W-2 to indicate that he was a statutory employee for 2012.

Petitioners filed a joint Form 1040, U.S. Individual Income Tax Return, for 2012, which they prepared themselves. On that Form 1040, they took the position that Mr. Fiedziuszko was a statutory employee. Petitioners claimed deductions on Schedule C of their Form 1040 for the following expenses related to Mr. Fiedziuszko's consulting business: $2,000 for supplies, $5,000 for travel (including meals and lodging), $9,500 for insurance (other than health), and $2,000 for advertising. In addition, they claimed a $29,540 deduction for self-employed health insurance on their 2012 Form 1040. The record contains no substantiation for these deductions other than "statements of fact" that outline Mr. Fiedziuszko's business expenses, which he prepared for trial.

## II. Medical and Dental Expenses

Mrs. Fiedziuszko was diagnosed with morbid obesity in 2011. Mr. Fiedziuszko also was considered obese and displayed prediabetic indications. Petitioners were counseled by their doctor to enter a medically supervised weight-loss program. They entered a program designed by Health Management Resources (HMR) and administered through the Palo Alto Medical Foundation, and were supervised by a health educator. Petitioners reported $16,322 of

[*5] deductible medical expenses for the cost of the HMR program. Petitioners also reported medical and dental expenses for the cost of a root canal for Mrs. Fiedziuszko and for Mr. Fiedziuszko's Medicare Part B premiums. In total petitioners claimed $19,342 of medical expense deductions that respondent disallowed.

The record includes a printout from Palo Alto Medical Foundation's website that provides information about its weight-loss services. A statement prepared by Mr. Fiedziuszko for trial lists the dates and amounts of payments for the HMR program. The statement separates the HMR expenditures made for Mrs. Fiedziuszko from those made for Mr. Fiedziuszko, but only those for Mrs. Fiedziuszko have corresponding check numbers.

III. Charitable Contributions

Petitioners claimed charitable contribution deductions of $2,855 in cash contributions and $27,482 in noncash contributions for 2012, of which respondent disallowed $28,237.

Mr. Fiedziuszko made periodic cash contributions to St. Albert Church in San Jose, California, of $20 or more. The record contains calendar pages for 2012 with numbers handwritten on most Sundays. A few entries list "church" and a number, and others have an illegible word and a number; but many of the entries

[*6] are simply a number (usually "70").  No other documentation in the record supports the cash contributions.

Petitioners also made noncash contributions to Goodwill of Silicon Valley in 2012.  Petitioners claimed that they made the following noncash contributions to Goodwill:  (1) a $3,957 donation on January 14, 2012; (2) a $3,787 donation on March 2, 2012; (3) a $3,850 donation on March 26, 2012; (4) a $3,677 donation on April 11, 2012; (5) a $4,012 donation on May 27, 2012; (6) a $4,311 donation on August 6, 2012; and (7) a $3,888 donation on December 30, 2012.  The donations included furniture, clothing, paintings, electronics, collectibles, and miscellaneous household goods.  The record includes a list, prepared by Mr. Fiedziuszko during the audit, of the noncash contributions along with each item's claimed "fair market value", which was simply the listed sale price for a similar item that Mr. Fiedziuszko found on Ebay.com or Amazon.com as of October 2014.

Mr. Fiedziuszko completed receipts for the noncash contributions to Goodwill.  His handwritten lists of items donated and the estimated values of those items appear in the section of Goodwill's receipts labeled "Items Donated (for donor's use)" and "Donor's Estimated Value".

[*7] IV.  Pension Income

In 2012 petitioners received pension and annuity payments totaling $72,730 reported on Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.  Of the $72,730, petitioners reported only $37,100 as taxable.  However, all of the Forms 1099-R indicated that the pension income reported as paid to petitioners was taxable.

V.  Notice of Deficiency and Petition

Respondent issued a notice of deficiency on March 10, 2015, making the following adjustments to petitioners' 2012 return:  (1) Mr. Fiedziuszko was not a statutory employee for the 2012 tax year and, thus, could not report business income and expenses on Schedule C; (2) petitioners failed to substantiate deductions for business expenses; (3) petitioners failed to substantiate deductions for medical and dental expenses; (4) petitioners failed to substantiate deductions for charitable contributions; and (5) petitioners failed to report includible pension income.  The notice of deficiency also determined a penalty under section 6662(a) and (b)(1) and (2) for an underpayment due to a substantial understatement of income tax and/or negligence.  The record includes a completed Civil Penalty

**[*8]** Approval Form, with a signature on the line provided on the form for "Group Manager Approval to Assess Penalties Identified Above".[2]

OPINION

## I.  Burden of Proof

Ordinarily, the burden of proof in cases before the Court is on the taxpayer. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under section 7491(a), in certain circumstances the burden of proof may shift from the taxpayer to the Commissioner.  Petitioners have not claimed or shown that they meet the specifications of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

## II.  Mr. Fiedziuszko's Employment Status

The income tax treatment of a taxpayer's trade or business expense deductions under section 62(a) depends on whether the taxpayer is "[performing] * * * services * * * as an employee" or as an independent contractor.  Generally, an employee may deduct unreimbursed employee business expenses on Schedule A, Itemized Deductions, as miscellaneous itemized deductions while an

---

[2] As explained infra pp. 24-27, we are reopening the record to admit the Civil Penalty Approval Form and a declaration of Internal Revenue Service (IRS) examiner Lin-Li Shuy insofar as it authenticates the Civil Penalty Approval Form for purposes of Fed. R. Evid. 902(11).

[*9] independent contractor may deduct trade or business expenses on Schedule C.

See secs. 62(a)(1), 162, 212. An employee treated as a "statutory employee" for

purposes of employment tax is not an employee for purposes of section 62 and

may report business income and expenses on Schedule C and avoid the Schedule

A limitations on the deduction of unreimbursed employee business expenses and

the phaseout of itemized deductions.[3] See Rosato v. Commissioner, T.C. Memo.

2010-39, 2010 WL 675696, at *4 (citing Rev. Rul. 90-93, 1990-2 C.B. 33).

Section 3121(d) defines "employee", in pertinent part, as

> (3) any individual (other than an individual who is * * * [a corporate officer or common law employee]) who performs services for remuneration for any person--
>
> \* \* \* \* \* \* \*
> (C) as a home worker performing work, according to specifications furnished by the person for whom the services are performed, on materials or goods furnished by such person which are required to be returned to such person or a person designated by him; * * *
>
> \* \* \* \* \* \* \*

---

[3] Sec. 67(a) limits itemized deductions by allowing miscellaneous itemized deductions--defined in sec. 67(b)--only to the extent that they exceed 2% of adjusted gross income (AGI). Unreimbursed employee business expenses are miscellaneous itemized deductions. See secs. 62(a)(2)(A), 67(b). Sec. 68(a) provides that otherwise allowable itemized deductions are limited for taxpayers whose AGI exceeds an "applicable amount" by the lesser of (1) 3% of the excess of AGI over the applicable amount or (2) 80% of the amount of itemized deductions otherwise allowable for the taxable year.

**[*10]**      if the contract of service contemplates that substantially all of such services are to be performed personally by such individual * * *

See Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 269 (2001).

Petitioners' eligibility to deduct expenses on Schedule C depends on Mr. Fiedziuszko's status as a common law employee. We therefore must decide whether Mr. Fiedziuszko was a common law employee.

We apply common law rules to determine whether an individual is a common law employee. Nationwide Mut. Ins. Co. v. Darden 503 U.S. 318, 323-325 (1992); Weber v. Commissioner, 103 T.C. 378, 386 (1994), aff'd, 60 F.3d 1104 (4th Cir. 1995). Whether an individual is a common law employee must be determined on the basis of the specific facts and circumstances involved. Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), aff'd, 862 F.2d 751 (9th Cir. 1988); Simpson v. Commissioner, 64 T.C. 974, 984 (1975). We generally consider several factors in making this determination: (1) the degree of control exercised by the principal; (2) which party invests in the work facilities used by the individual; (3) the opportunity of the individual for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; (7) the relationship the parties believed they were creating; and (8) the provision of

**[*11]** employee benefits.  See <u>Avis Rent A Car Sys., Inc. v. United States</u>, 503 F.2d 423, 429 (2d Cir. 1974); <u>Ewens & Miller, Inc. v. Commissioner</u>, 117 T.C. at 270; <u>Weber v. Commissioner</u>, 103 T.C. at 387; <u>Rosemann v. Commissioner</u>, T.C. Memo. 2009-185, 2009 WL 2475123, at *3.  No single factor is determinative. <u>Ewens & Miller, Inc. v. Commissioner</u>, 117 T.C. at 270; <u>Weber v. Commissioner</u>, 103 T.C. at 387.

Although not the exclusive inquiry, the degree of control exercised by the principal over the individual is the crucial test in determining the nature of the working relationship.  See <u>Clackamas Gastroenterology Assocs., P.C. v. Wells</u>, 538 U.S. 440, 448 (2003); <u>Leavell v. Commissioner</u>, 104 T.C. 140, 149-150 (1995). The principal need not direct the worker's every move to indicate common law employee status; the right to do so is sufficient.  <u>Weber v. Commissioner</u>, 103 T.C. at 387; <u>see</u> sec. 31.3401(c)-1(b), Employment Tax Regs.  And the degree of control necessary to find that an individual is an employee generally is lower when applied to professional services than when applied to nonprofessional services. <u>Weber v. Commissioner</u>, 103 T.C. at 388.

The fact that an individual provides his or her own tools, or owns a vehicle used for work, weighs against employee status.  <u>Ewens & Miller, Inc. v. Commissioner</u>, 117 T.C. at 271 (citing <u>Breux & Daigle, Inc. v. United States</u>, 900

[*12] F.2d 49, 53 (5th Cir. 1990)).  Earning an hourly or fixed salary weighs in favor of employee status while the opportunity for profit or loss weighs against it. Simpson v. Commissioner, 64 T.C. at 988; Kumpel v. Commissioner, T.C. Memo. 2003-265.  Permanency of a working relationship is indicative of common law employee status.  See Rosemann v. Commissioner, 2009 WL 2475123, at *6.  The withholding of taxes is consistent with a finding that an individual is a common law employee.  See Packard v. Commissioner, 63 T.C. 621, 632 (1975).  Benefits such as health insurance, life insurance, and retirement plans are typically provided to employees.  Weber v. Commissioner, 103 T.C. at 393-394.

We find on the record before us that Mr. Fiedziuszko was not a common law employee of Loral and that he is instead a statutory employee.  While his Form W-2 for 2012 did not indicate that he was a statutory employee, we believe this to be a mistake.  Mr. Fiedziuszko's Form W-2 for 2011 indicated that he was a statutory employee.  Nothing changed between 2011 and 2012:  Mr. Fiedziuszko was providing services under the same consulting contract with Loral in 2012 as he was in 2011.  Further, Mr. Fiedziuszko worked primarily from his home office rather than Loral's offices and produced reports and patents according to his assignments from Loral.  We therefore find that Mr. Fiedziuszko's employment status did not change from 2011 to 2012.

[*13] We also conclude that both Mr. Fiedziuszko and Loral intended to form an independent consulting relationship rather than a common law employee-employer relationship. Mr. Fiedziuszko advertised his services to several satellite companies and was hired by Loral through the temporary employment agency, West Valley, with which Loral works. Their relationship was a temporary assignment that terminated in July 2012.

The evidence in the record weighing against statutory employee status appears consistent with an error by West Valley in classifying Mr. Fiedziuszko. The weekly payroll deposits into his checking account and West Valley's withholding Federal and State income taxes and Social Security and Medicare taxes from Mr. Fiedziuszko's pay are consistent with a consulting contract for services. We conclude, therefore, that the totality of the circumstances indicates that Mr. Fiedziuszko was a statutory employee pursuant to section 3121(d)(3) for the 2012 tax year.[4] Thus, petitioners were entitled to report business income and expenses on Schedule C of their Form 1040.

---

[4] Because we conclude that Mr. Fiedziuszko was a statutory employee for 2012, the cost of his self-employed health insurance was properly reported on line 29 of petitioners' Form 1040 rather than on Schedule A.

**[*14]** III.  Deductions

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Taxpayers, therefore, are required to substantiate expenses underlying each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability.  Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001).  Under the Cohan rule, the Court may estimate the amount of the expense if the taxpayer is able to demonstrate that he has paid or incurred a deductible expense but cannot substantiate the precise amount, as long as he produces credible evidence providing a basis for the Court to do so.  Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).

Certain business expenses, including travel, lodging, and meal expenses, are subject to the heightened substantiation requirements of section 274(d).  Section 274(d) supersedes the Cohan rule.  Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46007-46008 (Nov. 6, 1985).  Section 274(d) contemplates that no deduction or credit shall be allowed on the basis of the taxpayer's mere approximations or unsupported testimony.  To meet these strict requirements, a

[*15] taxpayer must substantiate the following by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense, (2) the time and place of the travel or use, and (3) the business purpose of the expense. Sec. 274(d). To substantiate by adequate records, the taxpayer must provide: (1) an account book, log, or similar record and (2) documentary evidence, which together are sufficient to establish each element with respect to an expenditure. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46008 (Nov. 6, 1985). Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction "must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Id. subpara. (1).

A. Business Expenses

Petitioners' claimed deductions for Mr. Fiedziuszko's travel, lodging, and meal expenses for marketing and attending conventions are subject to the heightened substantiation requirements of section 274(d). Mr. Fiedziuszko credibly testified that he incurred travel, lodging, and meal expenses, but his testimony did not give us a sufficient basis for determining the amounts of these expenses under section 274(d). While he has provided us with his calendar and a statement of facts estimating the timing and costs of the trips, the documentary

**[\*16]** evidence Mr. Fiedziuszko provided is not reliable.  As he testified at trial, he reported the specified amounts in travel, lodging, and meal expenses because "that's what I recall what I paid".

Petitioners also failed to substantiate expenses reported for Mr. Fiedziuszko's business supplies.  The statement in the record listed only a total amount spent on business supplies.  While Mr. Fiedziuszko testified to the costs of specific supplies at trial, he did not provide supporting documentation.  For instance, Mr. Fiedziuszko testified that he spent about $840 on internet and phone services from Comcast.  But the only documentation consists of entries for monthly payments to Comcast in petitioners' checking account statements; those statements do not specify for what services the payments were made.  Neither his testimony nor the monthly checking account entries give us any basis on which to allocate between business and personal use.  Because petitioners did not meet their burden in substantiating Mr. Fiedziuszko's business expenses, we sustain respondent's determination.

B.  Medical and Dental Expenses

Section 213 allows a deduction for the cost of medical care not paid for by insurance.  Sec. 213(a).  The cost of medical care includes "amounts paid * * * for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the

[*17] purpose of affecting any structure or function of the body". Sec. 213(d)(1)(A). No deduction is allowed for personal, living, or family expenses. Sec. 262(a). Indeed, "an expenditure which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care." Sec. 1.213-1(e)(1)(ii), Income Tax Regs. A taxpayer may be requested to produce the name and address of each person to whom expenses for medical care were paid and the date of each payment to receive a deduction under section 213. Sec. 1.213-1(h), Income Tax Regs. If requested by the IRS, a taxpayer must produce: (1) a statement or itemized invoice from the payee showing what kind of treatment was provided and to whom, (2) any other expenses and to whom and for what purpose they were incurred, and (3) the amount paid and the date of payment. Id.

The IRS considers obesity a disease for purposes of section 213. Rev. Rul. 2002-19, 2002-1 C.B. 778. Uncompensated amounts paid for participation in a weight-loss program as treatment for obesity are expenses for medical care under section 213. Id. Petitioners were directed by their physician to enter a medically supervised weight-loss program. They enrolled in HMR's weight-loss program through the Palo Alto Medical Foundation. We find, therefore, that petitioners

**[\*18]** incurred expenses for their treatment in HMR's program, respectively, for medical care under section 213.

Even so, petitioners failed to substantiate the cost of their treatments at HMR. See sec. 1.213-1(h), Income Tax Regs. The statement of expenses that Mr. Fiedziuszko prepared for trial does not satisfy the requirement in the regulation of an itemized statement from the payee--the Palo Alto Medical Foundation. Nor are his statement and testimony sufficient substitutes for an itemized statement from the payee because there is no additional corroborating documentation for the payments.

C. Charitable Contributions

Section 170(a)(1) allows a deduction for any charitable contribution made within the taxable year. If a taxpayer makes a charitable contribution of property other than money, the amount of the contribution is generally equal to the fair market value of the property at the time of the contribution. See sec. 1.170A-1(c)(1), Income Tax Regs. Taxpayers must satisfy certain statutory and regulatory substantiation requirements for their charitable contribution deductions. See sec. 170(f)(8), (11); sec. 1.170A-13, Income Tax Regs. The nature of the required substantiation depends on the value of the contribution and on whether it is a cash or noncash gift. See sec. 1.170A-13, Income Tax Regs.

**[\*19]**    1.  <u>Cash Contributions</u>

For cash contributions a taxpayer must retain canceled checks, receipts from the donee organizations showing the dates and amounts of the contributions, or other reliable written records showing the names of the donees, dates, and amounts of the contributions.  <u>See</u> sec. 1.170A-13(a)(1), Income Tax Regs.

Mr. Fiedziuszko testified that when he attended church services in 2012 he typically would make a cash contribution of at least $20.  Petitioners produced no records to substantiate these contributions and no evidence showing how often he attended church or how much he gave each time he went, other than cryptic calendar entries.  While we found his testimony that he attended church and made contributions to be credible, we have no reliable evidence on which we can base an estimate of the total amount that petitioners contributed in 2012.  Neither his testimony four years after the fact nor his calendar entries (many of which consisted of only numbers) are sufficient.  We hold, therefore, that petitioners have failed to meet the substantiation requirements of section 1.170A-13(a)(1), Income Tax Regs.

2.  <u>Noncash Contributions</u>

Under section 1.170A-13(b)(1), Income Tax Regs., a taxpayer must maintain for each noncash contribution a receipt from the donee organization

**[\*20]** unless doing so is impractical. The donee receipt must show: (1) the name of the donee organization; (2) the date and location of the contribution; and (3) a description of the property in detail reasonably sufficient under the circumstances. Id.

A taxpayer who lacks a donee receipt is required to keep reliable written records including, among other things: (1) the name and address of the donee organization to which the contribution was made; (2) the date and location of the contribution; (3) a description of the property in detail reasonable under the circumstances (including the value of the property); and (4) the fair market value of the property at the time the contribution was made and the method used to determine the fair market value. Id. subpara. (2)(ii); see also Van Dusen v. Commissioner, 136 T.C. 515, 532 (2011). Further, no deduction is allowed for "any contribution of clothing or a household item" unless such property is "in good used condition or better."[5] Sec. 170(f)(16)(A).

Petitioners cannot support the values that Mr. Fiedziuszko assigned on the Goodwill receipts for any of the contributed items. Additionally, several of the

---

[5] Sec. 170(f)(16)(C) provides that the requirement that a contribution of clothing or household property must be in good used condition or better may not apply when the taxpayer includes a qualified appraisal of the property with his return, which was not done here.

[*21] items petitioners donated were clothing and household items. Mr. Fiedziuszko offered only notes in his "statement of facts" prepared for trial that described the clothing petitioners donated as "like new". He did not address the condition of the electronics, furniture, or dishes and silverware that petitioners donated. We find that petitioners failed to present credible evidence that their donated household items were "in good used condition or better." See Kunkel v. Commissioner, T.C. Memo. 2015-71, at *12 (quoting section 170(f)(16)(A)). Thus, we conclude that petitioners did not meet the substantiation requirements in section 170(f) and section 1.170A-13, Income Tax Regs., and will sustain respondent's disallowance of petitioners' noncash contribution deductions.

## IV. Unreported Pension Income

In general, gross income includes all income from whatever source derived, including income from pensions and annuities. Secs. 61(a)(9), (11), 72(a). However, portions of certain annuity payments representing a ratable recovery of a taxpayer's investment may be excludible from income. Sec. 72(b), (d). Previously taxed contributions to a section 401(a) qualified plan that are returned to the contributing taxpayer before the annuity starting date are not included in income for the year they are returned. Secs. 72(e)(2)(B)(ii), 402(a).

[*22] Petitioners do not dispute receiving total pension income of $72,730 but claim that some of that income was not taxable. At trial Mr. Fiedziuszko testified that he contributed a lot of money to his retirement plans and that all of his contributions were of posttax money. He produced no documentation to support his recollection. We did not find Mr. Fiedziuszko's testimony to be credible on this issue. Not only was his testimony evasive, it was contradicted by the only evidence on the record: The Forms 1099-R reporting the full amounts of these distributions as taxable.[6] Therefore we find that in 2012 petitioners received taxable pension and annuity distributions of $72,730, rather than the $37,100 that they reported on their Form 1040.

## V. Section 6662(a) Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of the portion of an underpayment of tax required to be shown on the return that is

---

[6] We find that the burden of proof with regard to petitioners' pension income remained with petitioners. The burden shifts to the Commissioner under sec. 6201(d) when a taxpayer asserts a reasonable dispute with respect to an item of income reported on an information return filed with the Secretary and has fully cooperated in providing information to the Secretary. Mr. Fiedziuszko did not dispute the receipt of the distributions but rather disputed their characterization. He offered only evasive and noncredible testimony in which he recalled that all of his contributions were post tax. There is no evidence that he raised his concerns with any of the third parties who prepared the information returns. See Parker v. Commissioner, T.C. Memo. 2012-66, 2012 WL 796414, at *2-*3; Spurlock v. Commissioner, T.C. Memo. 2003-124.

[*23] attributable to "[n]egligence or disregard of rules or regulations" and/or a "substantial understatement of income tax." Negligence includes "any failure to make a reasonable attempt to comply with the provisions of this title". Sec. 6662(c). An understatement of income tax is a "substantial understatement" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d). In the notice of deficiency, respondent determined both the negligence penalty and the substantial understatement penalty but conceded the negligence penalty after trial.

The Commissioner bears the burden of production with respect to an individual taxpayer's liability for a penalty and is required to present sufficient evidence showing that the penalty is appropriate. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447. To meet this burden for the substantial understatement penalty, the Rule 155 computations must confirm a substantial understatement and respondent must show that he complied with the procedural requirements of section 6751(b)(1). See sec. 7491(c); Graev v. Commissioner (Graev III), 149 T.C. __, __ (slip op. at 13-14) (Dec. 20, 2017), supplementing and overruling in part Graev II, 147 T.C. 460 (2016). Section 6751(b) requires the Commissioner to show that penalties assessed under sections 6662 were "personally approved (in writing) by the immediate supervisor of the individual

[*24] making such determination". See sec. 6751(b); Graev III, 149 T.C. at __ (slip op. at 13-14). Once the Commissioner meets his burden of production, the taxpayer bears the burden of proving that the Commissioner's determination of penalties is incorrect. Higbee v. Commissioner, 116 T.C. at 446-447.

We initially must determine whether respondent has satisfied the section 6751(b) procedural requirements for the section 6662(a) accuracy-related penalty imposed. Trial of this case was held, and the record was closed, before the issuance of our Opinion in Graev III, which vacated our holding in Graev II and held that the Commissioner's burden of production under section 7491(c) includes showing supervisory approval as required by section 6751(b). In light of the Court's decision in Graev III, we ordered respondent to file a response addressing the effect of section 6751(b) on this case and directing the Court to any evidence of section 6751(b) supervisory approval in the record, and petitioners to respond. Respondent was unable to direct the Court to any evidence in the record that satisfies his burden of production with respect to section 6751(b)(1), and he filed a motion to reopen the record to include a completed Civil Penalty Approval Form, along with a declaration by the examiner who recommended the penalty.

The decision to reopen the record to admit additional evidence is within our discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331-332

**[\*25]** (1971); <u>Nor-Cal Adjusters v. Commissioner</u>, 503 F.2d 359, 363 (9th Cir. 1974) ("[T]he Tax Court's ruling [denying a motion to reopen the record] is not subject to review except upon a demonstration of extraordinary circumstances which reveal a clear abuse of discretion."), <u>aff'g</u> T.C. Memo. 1971-200.  We "will not grant a motion to reopen the record unless, among other requirements, the evidence relied on is not merely cumulative or impeaching, the evidence is material to the issues involved, and the evidence probably would change the outcome of the case."  <u>Butler v. Commissioner</u>, 114 T.C. 276, 287 (2000); <u>see also</u> <u>SEC v. Rogers</u>, 790 F.2d 1450, 1460 (9th Cir. 1986) (trial court "should take into account, in considering a motion to hold open the trial record, the character of the additional * * * [evidence] and the effect of granting the motion"), <u>overruled on other grounds by</u> <u>Pinter v. Dahl</u>, 486 U.S. 622 (1988); <u>Coleman v. Commissioner</u>, T.C. Memo. 1989-248, 1989 WL 52685, <u>aff'd sub nom.</u> <u>Meisel v. Commissioner</u>, 991 F.2d 795 (6th Cir. 1993).

In reviewing motions to reopen the record, courts have considered when the moving party knew that a fact was disputed, whether the evidentiary issue was foreseeable, and whether the moving party had a reason for the failure to produce the evidence earlier.  <u>See</u> <u>George v. Commissioner</u>, 844 F.2d 225, 229-230 (5th Cir. 1988) (refusal to reopen the record not an abuse of discretion because the

**[\*26]** issue was foreseeable and court could see no excuse for failure to produce evidence earlier), aff'g Frink v. Commissioner, T.C. Memo. 1984-669.  For example, in Stivers v. Commissioner, 360 F.2d 35, 40-41 (6th Cir. 1966), vacating and remanding T.C. Memo. 1964-165, the court concluded that the record should be reopened to introduce evidence that was available at trial because the court concluded that "the taxpayers were justified in concluding that introduction * * * was not necessary in the absence of some factual challenge by the Commissioner."

We agree with respondent that the evidence is not cumulative and is material to the penalty issue in this case.  Reopening the record here serves the interests of justice because the record was closed in this case before we issued Graev III and because petitioners never raised section 6751(b) as an issue before the record closed.  Therefore, respondent was justified in concluding that introduction of the Civil Penalty Approval Form was not necessary.  We also agree with respondent that the Civil Penalty Approval Form is a record kept in the ordinary course of a business activity and is authenticated by the declaration.  See Fed. R. Evid. 803(6), 902(11).  Petitioners do not challenge the evidence as unreliable but instead argue that respondent had a full and fair opportunity to put on his case.  For the reasons stated above, we believe that justice favors our exercise of our discretion to reopen the record.  Petitioners also argue that

[*27] reopening the record would cause petitioners significant financial harm. But that is the point of reopening the record--if admitting the Civil Penalty Approval Form would not change the outcome, under Butler, we would not reopen the record. We therefore will admit the Civil Penalty Approval Form into evidence. We also will admit the declaration into evidence for the purpose of authentication under rule 902(11) of the Federal Rules of Evidence. See Clough v. Commissioner, 119 T.C. 183, 190-191 (2002).

Should the Rule 155 computations show a substantial understatement of income tax, we hold that respondent has met his burden with respect thereto on the basis of those computations and the completed Civil Penalty Approval Form. Therefore the burden shifts to petitioners to demonstrate that respondent's penalty determination was incorrect, for example because there was reasonable cause for any portion of the underpayment and they acted in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 446-447.

The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's efforts to assess the proper tax liability. Id.; see Halby v. Commissioner, T.C. Memo. 2009-204. We also

**[\*28]** consider the taxpayer's experience, knowledge, and education.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners have not shown reasonable cause for the underpayment of tax for 2012.  They offered no explanation for their understatement and we conclude that petitioners' attempt at substantiation, which came far after the return was filed, fell short of what was required.  Mr. Fiedziuszko's level of sophistication would indicate a better understanding of the requirements than petitioners displayed.  Further, some of Mr. Fiedziuszko's testimony--particularly his testimony regarding his pension income--was not credible.  We therefore hold that if Rule 155 computations confirm a substantial understatement, petitioners are liable for the penalty for an underpayment attributable to a substantial understatement of income tax under section 6662(a) and (b)(2).

Any contentions we have not addressed we deem irrelevant, moot, or meritless.

To reflect the foregoing,

<u>An appropriate order will be issued</u>

<u>and a decision will be entered under Rule</u>

<u>155</u>.